[Civ. No. 735.  Third Appellate District.—October 22, 1910.]

# WILLIAM H. SISK, Respondent, v. THOMAS CASWELL, Appellant.

ACTION TO QUIET TITLE TO IRRIGATING DITCH—EASEMENT—OBSTRUCTION—INJUNCTION—DAMAGES—SUFFICIENCY OF COMPLAINT.—In an action to quiet title to an irrigating ditch running through and upon defendant's land, as an easement thereon, which has been obstructed and injured by defendant, and to enjoin defendant from further obstruction or interference therewith, and to recover the damages suffered from such injury, it is held that the complaint states facts sufficient to constitute a cause of action and to entitle the plaintiff to the relief asked for, and that a general demurrer thereto was properly overruled.

ID.—SPECIAL DEMURRER—QUESTION OF PARTIES—ASSIGNEES OF IRRIGATING RIGHTS—SHOWING OF IRREPARABLE INJURY.—Where the complaint avers that the water is valuable for irrigation, and that depriving plaintiff thereof, unless interference with the ditch is restrained, will result in irreparable injury to plaintiff, that plaintiff has sold portions of his land, and has assigned to his vendees irrigating rights from said ditch, and that a failure to restrain interference therewith will subject plaintiff to liability for damage and litigation on account of such assigned rights of irrigation, and that it would also result in irreparable injury to deprive plaintiff's remaining land from irrigation, a special demurrer raising, in different forms, the objection that such assignees are necessary parties to the action, was properly overruled.  The complaint makes no averments calling for any relief to such assignees, and they are neither necessary nor even proper parties.

ID.—SUPPORT OF FINDINGS SUSTAINING COMPLAINT.—It is held that all findings relative to the cause of action stated in the complaint, including the charge that defendant prevented, and threatens to continue to prevent, the plaintiff and his grantees from using the ditch, are amply supported by the evidence.

ID.—ISSUES AS TO VALIDITY OF RESERVATION OF DITCH IN PLAINTIFF'S DEED TO DEFENDANT—CONTRACT OF SALE — SPECIAL AGREEMENT — CONFLICT—SUPPORT OF FINDING.—Where issues were raised by defendant's answer and cross-complaint· as to the validity of a reservation of a ditch in favor of the plaintiff and his heirs and assigns, in a deed of land from plaintiff to defendant purchased under a contract of sale not providing therefor, a finding that the reservation of the ditch was specially agreed to, the ditch having been commenced before the money was fully paid and the deed signed, is held to be sufficiently sustained by the corroborated testimony

of the plaintiff, notwithstanding the conflicting testimony of the defendant, the question of veracity between them not being determinable by the appellate court.

Id.—AGREEMENT TO CONVEY LAND "FREE AND CLEAR OF ALL ENCUMBRANCES"—CONSTRUCTION.—An agreement in the contract of sale to convey the land "free and clear of all encumbrances" only relates to the encumbrances defined in section 1114 of the Civil Code, viz., "taxes, assessments and liens," the "liens" being such as are defined in section 1180 of the Code of Civil Procedure and section 2872 of the Civil Code. Such agreement is not inconsistent with a special agreement to reserve the easement of a ditch from the deed under such contract, which is not an "encumbrance" within its meaning. If the vendee desired to exclude such visible easement, he should have expressly so declared in the agreement, and his failure to do so implies that such was not his intention.

Id.—RULE AS TO VISIBLE PHYSICAL BURDENS—ABSENCE OF EXPRESS AGREEMENT—PRESUMED CONTRACT.—In cases where there is a physical burden upon property conveyed which is visible, there is a fair and reasonable presumption, in the absence of an express agreement, that both parties act with reference to this plain existing burden; that the vendor on the one hand demands and the vendee on the other hand pays, only the fair value of the land, as visibly encumbered; and such burdens by way of notorious physical easements are not really "encumbrances" within the meaning of the covenant against encumbrances, because the real subject matter of the dealing between the grantor and grantee is the land subject to the visible easements.

Id.—PRESUMED CONTRACT NOT OVERCOME — MEANS OF KNOWLEDGE OF DITCH AND OF CONTENTS OF DEED RESERVING EASEMENT.—*Held,* that the presumed contract is not overcome, but confirmed and strengthened by the evidence supporting the findings as to the agreement for the reservation of the ditch, and as to the means of knowledge by the defendant both of the existence of the ditch and of the reservation thereof in the deed.

Id.—ESTOPPEL OF GRANTEE TO PLEAD IGNORANCE OF COVENANTS IN RECORDED DEED.—A grantee will not be permitted to plead ignorance of the covenants of a deed executed to him after it has been accepted and recorded, as a ground for defeating the force and effect of such covenants, where there is no evidence that the grantor in any way prevented a personal inspection of its contents by him.

Id.—PRESUMED READING OF DEED BY GRANTEE—NOTICE FROM RECORD.— Every person is presumed to read the deed under which he holds, and a failure to read recitals therein cannot avail him as a defense when it is sought to charge him with notice thereof. If a man will under certain circumstances be presumed to know the contents of a deed to another, how much more reasonable is it to presume that he has knowledge of the contents of his own deed. For the law will

not permit him to deny notice by insisting that he has not read the deed.

APPEAL from a judgment of the Superior Court of Stanislaus County, and from an order denying a new trial. L. W. Fulkerth, Judge.

The facts are stated in the opinion of the court.

Maddux & Maddux, for Appellant.

P. H. Griffin, for Respondent.

HART, J.—This controversy arises over an alleged claim of right by plaintiff to the use, for the purpose of irrigation, of water carried through a certain irrigating ditch running through and upon the land of the defendant. The purpose of the suit is to quiet plaintiff's title to and interest in said ditch, to enjoin defendant from interfering with or obstructing the exercise of his right to use the same, and for damages alleged to have been suffered by plaintiff for defendant's wrongful obstruction thereof.

The plaintiff obtained judgment as prayed for, and from said judgment and the order denying him a new trial the defendant has appealed.

It appears from the allegations of the complaint that, on the second day of April, 1904, the plaintiff was the owner in fee of a tract of land in Stanislaus county, described as the N. E. ¼ of section 18, the S. ½ of said section 18, and, jointly with one W. F. Rose, of the N. E. ¼ of section 19, all said land being in township 4 S., R. 9 E., M. D. B. & M.; that on the tenth day of December, 1904, plaintiff sold and conveyed to defendant said N. E. ¼ of section 18, "reserving, as provided in said conveyance, 'the right to use the ditch now constructed on said premises to run water to other lands of plaintiff in the neighborhood, or to join on to said ditch and to extend the same for the same purpose,' which said right and interest in said land and ditch was, and was so stated in said conveyance, to extend to the heirs and assigns of plaintiff for any lands owned by him or which he had sold in the neighborhood which could be conveniently irrigated therefrom, and plaintiff ever since has been and now is the owner of and entitled to the

rights and interest in said land so reserved, except that plaintiff had, on the said second day of April, 1904, . . . and on the twenty-ninth day of April, 1905, . . . and on the ninth day of May, 1905,'' sold and conveyed to a number of other parties (named in the complaint) respectively, certain parts, in separate and distinct tracts, of the described land remaining to him after the said sale and conveyance to the defendant. The said water ditch is described as being ten feet wide on the bottom and four feet deep; that the beginning of the center line of said ditch was at a point a fraction over twenty-four feet west of the northeast corner of said section 18, and, by certain meanderings, ran to a point four hundred and fifty-five feet west of the ''east boundary of said section.'' The complaint further declares that ''at all times herein mentioned all the lands herein described were within the Turlock Irrigation District and entitled to receive therefrom their proportion of the water provided thereby under the laws pertaining thereto for irrigation purposes, and all of said lands were and are in the neighborhood of the land conveyed to defendant as aforesaid and of said water ditch, and could be conveniently irrigated therefrom, and said ditch was constructed for the purpose of such irrigation, and but for the acts of defendant herein alleged would have received such water, all of which was well known to defendant.''

It is charged that the defendant has wrongfully destroyed ''the northerly five hundred and twenty-two and four-tenths feet of said ditch, to plaintiff's damage in the sum of $75, the cost of reconstruction thereof,'' and that defendant has prevented plaintiff ''from entering upon, and from having and using said ditch, and making necessary repairs and improvements thereon, so as to use the same for irrigation of lands which he would have irrigated but for such acts of defendant, to plaintiff's damage in the further sum of $500,'' and it is further alleged that such damage will continue in a much greater sum each year that plaintiff is so prevented by defendant from having and using said ditch. It is alleged that defendant claims some estate or interest, adverse to plaintiff, ''in said ditch and interest in the lands conveyed by plaintiff to defendant as aforesaid, which claim is without right,'' and that defendant denies plaintiff's right in said ditch, ''and has

slandered, and will, if not restrained, continue to slander, plaintiff's title as aforesaid."

Paragraph 8 of the complaint contains the following averments: "That the lands aforesaid are of great value for irrigation, and.are of little value without such irrigation; that the acts of defendant, done and threatened as aforesaid, have prevented and will, if not restrained, continue to prevent the same from being irrigated, and will cause great and irreparable injury, the amount of which cannot be determined; that a portion of the considerations for the various sales and conveyances from plaintiff to the third persons as hereinbefore alleged was the rights and privileges appertaining to the respective tracts by reason of the facts aforesaid, and the said acts of defendant herein complained of have rendered, and will if not restrained continue to render plaintiff liable to damage and litigation on account thereof; that plaintiff desires and intends to, and will, if not prevented by the wrongful acts of defendant herein complained of, irrigate his said lands remaining unsold as aforesaid, and will sell portions thereof, but by reason of the said acts of defendant, plaintiff has been prevented, and unless the same are restrained, plaintiff will be prevented, from so irrigating said land or selling any part thereof, which works, and will continue to work, if continued, great and irreparable injury to plaintiff, the amount of which cannot be determined."

A general and a special demurrer were interposed to the complaint and overruled by the court.

The special demurrer is based upon the grounds: 1. "That there is a·misjoinder of parties plaintiff," the point here involved being that, as the complaint alleges that parts of the land described in said pleading were conveyed by plaintiff to other parties, and as the plaintiff thus "asks relief as to those parties similar to the relief that he asks himself," said other parties should have been made parties plaintiff. 2. That several causes of action have been improperly united, in that "plaintiff has alleged that the damage will arise to all his assignees, and that their cause of action is the same as his and specifies the names of the assignees in his complaint, . . . and also asks that the use to the ditch be quieted as to the rights of the assignees mentioned." 3. That there is a "misjoinder of defendants," in that, if the assignees refused to appear as

plaintiffs, they should have been made defendants, "for the reasons stated in" subdivision 1 of the grounds of the special demurrer-as they are herein given. 4. That the complaint is ambiguous, unintelligible and uncertain for the alleged reason that "it cannot be determined whether or not the amount of damages claimed in the complaint is for the individual damage to plaintiff and his land or is the damage to his lands and those of his assignees in the aggregate; that it cannot be ascertained whether it is an action to quiet title or a suit for damages."

The demurrers having been overruled by the court, the defendant filed an answer to the complaint and also a cross-complaint.

The answer specifically denies all the important averments of the complaint, and, as separate defenses, in substance, alleges: That plaintiff agreed, at the time of the execution of the said conveyance to defendant, to construct a canal and deliver water on the land so sold and conveyed to defendant from the water system of the Turlock Irrigation District; that, in view of said agreement, defendant "prepared, checked up and planted forty-three acres of said land to alfalfa"; that plaintiff failed to deliver any water on said land as agreed, and that on account of said failure "the defendant was unable to plant more than forty-three acres, and the land planted failed to make another crop, to the damage of defendant in the sum of $250"; that plaintiff, since the sale of said land to defendant, "has gone upon said land without the consent of the defendant and dug up said land and attempted to construct a canal across said land and otherwise interfere with the possession of the defendant, in all to his damage in the sum of $500."

The sum of the cross-complaint is that defendant bought the land from plaintiff on the twenty-ninth day of March, 1904; that on that day defendant delivered to plaintiff his check for $200 as a payment thereon; that, on the eighth day of June, 1904, the plaintiff and the defendant entered into a written contract, by the terms of which the plaintiff agreed to sell to defendant and the defendant agreed to buy, for the sum of $9,929.55, the land affected by this controversy; that the terms of payment, as thus agreed upon, were as follows: "$200 heretofore paid, $5,804.36 paid this day (including

accrued interest), and the balance . . . $4,000 on the delivery of conveyance and title to said property as hereinafter provided," etc.; that on the execution of said contract defendant paid to plaintiff the sum of $5,804.36; that the deed to said property was, as to the terms thereof, to correspond with said contract—that is, that the plaintiff would execute and deliver to defendant a good and sufficient deed, conveying said land "free and clear of all encumbrances made, done or suffered by said first parties"; that on the tenth day of December, 1904, said first parties executed a deed to defendant, conveying said land; that said deed was drawn by one George Perley, and delivered to the Stanislaus Abstract Company, by which company or its officers it was filed for record with the county recorder; that, without the knowledge and against the consent of defendant, the following reservation was incorporated in said deed, viz.: "Save and except therefrom the east twenty feet of the said northeast quarter of section 18, reserved for road purposes. The parties of the first part also reserve the right to use the ditch now constructed on said premises to run over the lands of the parties of the first part in the neighborhood, or to join on to said ditch and extend the same for the same purpose, such right to use said ditch to extend to the heirs or assigns of the parties hereto of the first part for any lands owned by them or which they or either of them have sold in the neighborhood, which can be conveniently irrigated therefrom." The cross-complaint declares that defendant was not present when said deed was prepared, executed or delivered; that "said abstract company, nor anyone else had any authority from defendant to accept any deed containing either or both of the aforesaid reservations"; that "at the time of the preparing of said deed plaintiff had in his possession a duplicate of the aforesaid agreement of June 8, 1904; that knowingly and fraudulently, and in fraud of the rights of defendant, plaintiff had said deed prepared and signed and acknowledged, and knew at all of said times that said reservations could not be a part of said deed."

The prayer of said cross-complaint is that plaintiff "take nothing by this action," and that the said deed be reformed by striking therefrom the reservations aforesaid, and for the sum of $750 damages, etc.

Plaintiff answered the cross-complaint, denying each material allegation thereof and reaffirming the vital averments of the complaint.

1. We see nothing erroneous in the court's order overruling the demurrers.

It is not seriously urged that there are not sufficient facts stated in the complaint to entitle plaintiff to the relief asked for, and there can be no doubt that the general demurrer was properly overruled.

Nor did the court err in its order overruling the special demurrer. It may first be suggested that the ground that there is a "misjoinder" of parties plaintiff or parties defendant is, strictly speaking, inaccurate here. Obviously, if the complaint is faulty as to parties, it is because there is a defect or "nonjoinder" of parties and not a misjoinder. But there would be even then no tenable reason for criticism of the complaint. The object of the suit, as very clearly appears from the averments of the complaint, is to prevent the defendant from inflicting upon plaintiff irreparable injury and to obtain compensation for damages already individually suffered by him from the alleged acts of the defendant. The averments with respect to the sale by plaintiff to the other parties named in the complaint of certain parts of his lands and that the parts so conveyed were, in common with his own, entitled to the privilege of using the ditch for the purposes of irrigation, were, manifestly, inserted for no other purpose than to disclose the extent of the injury which would be suffered by plaintiff through the conduct of defendant in preventing the plaintiff and his grantees from using said ditch—that is, that the injury so inflicted would be irreparable. The complaint, as we have seen, declares that plaintiff had conveyed to said other parties certain tracts of land with a distinct agreement upon his part with said parties that the tracts thus conveyed were entitled to and would receive the benefit of irrigation by means of said ditch, and that defendant's obstruction of plaintiff's right to use the water carried by said ditch for the lands so conveyed will, by reason of said agreement, subject the latter to litigation and consequent expense and damage, in addition to the injury which he will sustain by being deprived, through the said acts of the defendant, of the privilege of thus irrigating his own land. There is, in other words, absolutely

nothing in the averments which calls for any relief for the grantees of plaintiff. They are, therefore, neither necessary nor even proper parties.

The foregoing also disposes of the claim made under the third and fifth grounds of the special demurrer. It is very clear from the complaint that the plaintiff seeks damages for alleged injuries individually sustained by him and does not claim the right to or ask for damages which the lands of his grantees have sustained through the alleged conduct of the defendant. The reference in the complaint to damage to the lands of his said grantees is, as before stated, for the sole purpose of showing, as an element of damages which he has himself sustained by reason of his promise to said grantees, at the time he executed the conveyances to them, that they should and would be entitled to the use of said ditch, to what extent, and in what way or manner he has sustained damage.

2. All the findings of the court—some in a general way and others specifically—are assailed as being without sufficient support. Some of these assignments we shall specially notice. But it may be said generally that all the averments of the complaint essential to a statement of a cause of action are sustained by the proofs. The charge that the defendant prevented and threatens to continue to prevent the plaintiff and his grantees from using said ditch is amply supported. The plaintiff testified that when he went upon defendant's land for the purpose of extending the ditch so that he and his grantees could use the same, the defendant ordered him away and refused to allow him to proceed; that defendant covered up the ditch and in other ways obstructed plaintiff's use of the canal.

But the most important contention is that the evidence does not justify and support the finding that the plaintiff had the right or was authorized, under his agreement with defendant, to insert in the deed executed by him to said defendant the clause providing for the reservation referred to. The decision of this controversy, in our opinion, could well rest alone on the determination of this question, as it in reality, aside from the question of the alleged injury and threatened injury, involves the vital point in the case. But it will not be improper to consider other questions which are discussed in the brief.

The decree of the court limits its operation to the ditch, making no reference to the reservation so far as it relates to the roadway. The respondent does not complain of the judgment in any respect, and, therefore, that feature of the reservation pertaining to the road is not before us.

The second part of the reservation reserves, as before noted, to the plaintiff and to "his heirs and assigns" the right to use the ditch for the purpose of running water over their lands and to extend said ditch for such purpose.

The undisputed evidence shows that, on the twenty-ninth day of March, 1904, the defendant entered into negotiations with the plaintiff as the owner of the N. E. ¼ of section 18, Tp. 4 S., R. 9 E., and plaintiff and said William F. Rose, as the owners of the E. ½ of the N. E. ¼ of said section 18, for the purchase of the lands so described; that on said day the defendant gave to plaintiff his check for the sum of $200, on the back of which was the following indorsement: "This check is to apply on payment of N. E. ¼ and E. ½ of N. W. ¼ of section 18, township 4 S., Range 9 Mt. Diablo Base and Meridian. $42.50 for first description and $40 on last named above, when abstract is examined, and charge interest on full amount of purchase money not before 30 days after this date. W. H. Sisk."

On the eighth day of June, 1904, said W. F. Rose and plaintiff, as owners of said lands, and the defendant, entered into and executed the written agreement, already referred to, for the sale by the first parties and the purchase by the defendant of said lands.

There is, in connection with this point, considerable discussion in the briefs of the proposition whether the transaction of March 24, 1904, in which the check mentioned was given by defendant to plaintiff, amounted to an agreement of sale or merely an option, tendered to defendant, to purchase the lands. The court found, in harmony with the theory of plaintiff on the proposition, that the transaction involved an option, and not an agreement to sell and buy. We cannot see what material difference it would make, so far as it would affect the right of plaintiff to insert the reservation in the deed, whether the transaction amounted to a contract of sale or only an option. But counsel for appellant declares that if the sale was effected on "December 10th the plaintiff should recover,"

but that if it took place on "March 29th or June 8th, the defendant should recover." We are unable to perceive in the circumstance, on whatsoever date it might have occurred, any such importance or any particular probative significance. Indeed, if the circumstance ever possessed any weight in its bearing upon the principal question in this case, viz.: Whether the reservation was included in the deed fraudulently and in violation of the agreement of sale between the parties, its importance in that regard, like that of any other circumstance which was offered at the trial in support of the main issue, has been lost, so far as this court is concerned, in the fact that there is disclosed by the record before us ample evidence to support the finding, which in effect declares that the reservation was incorporated in the deed upon an agreement between the parties to the instrument and with the consent of the defendant. Indeed, if all of plaintiff's testimony was credited by the trial court, it justified a direct and unqualified finding that the reservation was inserted in the deed upon an express agreement of the parties.

The plaintiff testified that, on the occasion of the delivery of the check to him by defendant, a conversation occurred between them concerning the conditions of the sale and the covenants of the deed, wherein defendant "consented to have the reservation for the ditch and the road—the ditch that was then constructed on the land." "The deed," continued plaintiff, "was prepared in accordance with the understanding at that time. There was nothing in the deed, as far as I understood it, different from what was understood before the deed was drawn." Mr. W. F. Rose, to some extent, corroborated the testimony of plaintiff on this point.

The defendant, it is true, denied that there was any understanding that the reservation should be inserted in the deed, and declared that he knew nothing of said reservation until long after the deed had been recorded and shortly before the institution of this action. But the testimony introduced by defendant on this point only presents a substantial conflict in the evidence and, of course, this court cannot settle the issue of veracity between the parties.

It is contended, however, that the deed, with respect to the reservation, is obviously at variance with the terms of the written agreement of sale, in that said agreement not only

made no provision for said reservation, but that therein, as before noted, the plaintiff agreed to execute and deliver to the defendant, upon the payment of the consideration, "a good and sufficient deed, conveying said land, *free and clear from all encumbrances, made, done or suffered by the said first parties.*"

There is absolutely nothing in this point, and we are of opinion that it presents a question which can have little bearing on the determination here of the principal point in this case. All the prior negotiations and agreements of the parties relative to the sale and purchase of the lands involved here were, of course, merged in the deed of conveyance, and the deed itself must, as we shall presently see, be the sole guide for measuring and determining the rights of the parties thereunder. But the point is given considerable attention by counsel, and we shall, therefore, examine it to some extent.

The argument is that, by the language of the agreement which we have italicized, the plaintiff agreed to convey the land to defendant free from all burdens of whatsoever kind or character, whether they be such as would affect the title or those which would affect only the physical condition of the property, as, for illustration, public roads or rights of way. We think that it is reasonably certain that the "encumbrances" referred to and contemplated by the agreement are of that class only that are defined by section 1114 of the Civil Code, viz.: "Taxes, assessments and liens." (See Code Civ. Proc., sec. 1180, and Civ. Code, sec. 2872, for definition of a "lien.") If the vendee intended to include all encumbrances of the two general kinds, he should have taken the pains to have explicitly so declared in the agreement, and no doubt would have done so had that been his intention.

In *Memmert* v. *McKeen*, 112 Pa. 320, [4 Atl. 544], it is said: "Encumbrances are of two kinds, viz.: 1. Such as affect the title; 2. Those which affect only the physical condition of the property. A mortgage or other lien is a fair illustration of the former; a public road or right of way, of the latter. Where encumbrances of the former class exist, the covenant referred to, under all the authorities, is broken the instant it is made, and it is of no importance that the grantee had notice of them when he took the title. (*Cathart* v. *Bowman*, 5 Pa. 317; *Frank* v. *Voneida*, 11 Serg. & R. 109, [14 Am. Dec.

617].)   Such encumbrances are usually of a temporary character and capable of removal; the very object of the covenant is to protect the vendee against them; hence, knowledge, actual or constructive, of their existence, is no answer to an action for breach of such covenant.   Where, however, there is a servitude imposed upon the land which is visible to the eye, and which affects not title, but the physical condition of the property, a different rule prevails.   Thus it was held in *Patterson* v. *Arthurs,* 9 Watts, 152, that where the owner had covenanted to convey certain lots free from all encumbrances, a public road, which occupied a portion of such lots, was not an encumbrance within the meaning of the covenant."   (See *Kutz* v. *McCune,* 22 Wis. 628, [99 Am. Dec. 85] ; *Haldame* v. *Sweet,* 55 Mich. 199, 200, [20 N. W. 902] ; *Harwood* v. *Benton & Jones,* 32 Vt. 724; *Patterson* v. *Holmes,* 16 Ind. 142; *Burk* v. *Hill,* 48 Ind. 52, [17 Am. Rep. 731] ; *Smith* v. *Hughes,* 50 Wis. 620, [7 N. W. 653].)

Speaking of that class of encumbrances that affect only the physical condition of the property, Brewster, in his work on Conveyancing, section 203, says: "In cases where there is a physical burden of this sort, which is visible, there is a fair and reasonable presumption, in the absence of an express agreement, that both parties act with reference to this plain, existing burden, and that the vendor on the one hand demands, and the vendee on the other pays, only the fair value of the land as visibly encumbered.   Therefore, it is said, such burdens, by way of open and notorious easements, are not really encumbrances within the meaning of this covenant, because the real subject matter of the dealings between the grantor and the grantee is the land, subject to visible easements."

There is evidence in the record to the effect that, at the time of the check transaction, the ditch on the lands conveyed to defendant, while not fully completed, was "entirely V'd out"; that the defendant, at the time the deed was written and delivered to the abstract company for him, had seen said ditch. Plaintiff testified: "It was a ditch.   I think it would have run water through it if run into the upper end."   It further appears that the value of the lands owned by plaintiff and his grantees rested largely upon the fact that they could be given the benefit of irrigation by an extension of said ditch to said

lands. Under all the authorities, the presumption is, therefore, there being no express agreement to the contrary, that the parties acted in this transaction, in so far, at least, as the ditch is concerned, "with reference to this plain, existing burden," and as so encumbered the land was purchased by defendant. The evidence not only utterly fails to overcome this presumption, but in fact confirms and strengthens it by proof abundantly sufficient to support the findings of the court in favor of said reservation, or, in other words, that the agreement of June 8, 1904, "was not, and was not intended by the parties to be, the full agreement of the parties . . . and the reservation and agreement therein (the deed) were not contrary to any agreement of the parties and was not in fraud of any right of the defendant," etc., and that plaintiff "had the right to include the reservation contained in the deed referred to in the pleadings herein in said deed," etc.

The foregoing observations virtually dispose of appellant's criticism of finding 10. The court therein found that the defendant "at all times had the means of knowledge of the contents of said deed, though he did not have the actual personal knowledge thereof, till after its receipt and acceptance by him." The court elsewhere found that the reservation was included in said deed "with the implied knowledge and consent of defendant, but without his actual personal knowledge and consent," etc.

But it seems to us that there is another and conclusive answer to the defense interposed here, and that is that a party will not be permitted to plead ignorance of the covenants of a deed executed to him, after it has been accepted and recorded, as a ground for defeating the force and effect of such covenants. The presumptions are always in favor of the validity of a deed and its recitals.

It is not, of course, claimed that the plaintiff fraudulently or otherwise prevented the defendant from giving the deed personal inspection and thus fully familiarizing himself with its precise provisions and covenants before he accepted and recorded it. The deed, as has been seen, was delivered for the defendant to the Stanislaus Abstract Company, and was recorded by a Mr. Perley, president of said company, for the defendant. The defendant testified that he did not read the deed after it was written or before or after its recordation

until a short time before the commencement of this action,
and that he knew nothing, from a personal inspection of the
instrument, of its contents, the claim being that he had sup-
posed and had reason and right to rely upon the supposition
that the contents of the deed corresponded with his interpreta-
tion of the terms of the written agreement as to encumbrances.
He further denied that the abstract company or any other
person had any right to cause to be recorded a deed contain-
ing the reservation objected to; but Perley testified that he re-
corded the deed for defendant "and he paid me for it." This
witness further testified: "While I don't know that Mr. Cas-
well knew the contents of the deed, he was present and had an
opportunity."

It is, as declared, not only true that "the presumption is in
favor of the validity of every grant issued in the forms pre-
scribed by law, and that it is incumbent on him who contro-
verts, to support his objections" (*Patterson* v. *Jenks,* 2 Pet.
(U. S.) 216; *Payne* v. *Treadwell,* 16 Cal. 228; *Latham* v. *City
of Los Angeles,* 87 Cal. 518, [25 Pac. 673]), but "every per-
son is presumed to read the deed under which he holds, and a
failure to read certain recitals contained in the deed cannot
avail him as a defense when it is sought to charge him with
notice." (Devlin on Deeds, sec. 1002; *Weisenberg* v. *Tru-
man,* 58 Cal. 63; *Steez* v. *Kranz,* 32 Minn. 313, [20 N. W. 241];
*Dargin* v. *Beeker,* 10 Iowa, 571; *Hamilton* v. *Nutt,* 34 Conn.
501.)

It is said in the last of the cited cases: "Men of ordinary
prudence will use all reasonable means to ascertain the state
and condition of their own titles. Hence, we may lay it down
as a rule, founded upon the experience of mankind, that one
who has knowledge of the existence of a deed, to which he has
access, and which affects the title to property in which he is
interested, will, in equity, be presumed to have knowledge of
the contents of the deed. . . . Under our recording system a
deed duly recorded is constructive notice to all the world; and
the law conclusively presumes that every person interested has
knowledge not only of the deed, but of its precise language,
where that is material. . . . If a man will, under certain cir-
cumstances, be presumed to have knowledge of the contents
of the deed of another, how much more reasonable is it to
presume that he has knowledge of the contents of his own

deed." And it is said in *Wailes* v. *Cooper*, 24 Miss. 228, that "it is in consonance with reason, that if the title deeds under which a purchaser derives title recite an encumbrance, he will be bound by that recital, and presumed to have had notice of it, whether he has read it or not. For the law will not permit him to deny notice by insisting that he has not read the deed."

From the moment of the filing of the deed here for recordation, the defendant was charged with constructive notice of all its recitals, but, according to his own testimony, he remained supine and apparently indifferent as to its precise provisions from the time it was filed with the recorder—December 24, 1904—until about "a month or two" before the trial of this action, which was in January, 1906. It is, therefore, very clear that his want of personal knowledge of the precise contents of the deed, prior to its execution, delivery, acceptance and recordation, if, in truth, he was without such knowledge, was entirely due to his own inexcusable negligence in not fully posting himself, beforehand, on the terms of an instrument to which he was about to bind himself. His excuse that he relied upon plaintiff's written agreement with him and supposed that the deed would correspond therewith is no excuse at all. He had no right, as we have shown, to rely for personal knowledge of the recitals of his deed upon his own interpretation of the scope of said agreement. If such an excuse were available as a defense against the recitals of a deed, many such instruments would rest on exceedingly frail and insecure grounds, and court calendars, as a consequence, would soon be congested with all manner of controversies arising out of the unmitigated ignorance of vendors and vendees as to exactly what covenants they intended should be included in the most solemn legal writings to which men may bind themselves—writings which the law, to avoid, as far as possible, future controversies in relation thereto, require and prescribe shall be executed under circumstances of the strictest circumspection and the evidence thereof preserved in the most public and enduring form.

Other parts of the findings are challenged as not having sufficient support from the proofs, but to these assignments we have already in effect replied adversely to the contention of appellant. We have shown that the evidence sufficiently discloses that a ditch, constructed for irrigation purposes, was

partly completed on the lands conveyed by plaintiff to defendant at the time of the conveyance. There is also enough support for the finding that ''the lands mentioned in said complaint as conveyed to other parties could and can be conveniently irrigated from said ditch,'' and that ''said lands and the land of plaintiff described in said complaint would have received water for such irrigation but for the acts of the defendant.''

3. Some of the court's rulings on the evidence are objected to as erroneous and prejudicial. We have discovered no error in any of the challenged rulings, and see no reason for giving these assignments special consideration.

The judgment and order are affirmed.

Burnett, J., and Chipman, P. J., concurred.