[Civ. No. 12618.   Second Dist., Div. One.   Oct. 22, 1941.]

ELISE HOTCHKISS MATHEWS, as Administratrix With the Will Annexed, etc., Appellant, v. THE PACIFIC MUTUAL LIFE INSURANCE COMPANY OF CALIFORNIA (a Corporation) et al., Respondents.

H. R. Skinner and George S. Dennison for Appellant.

Guthrie & Darling for Respondents.

ARCHBALD, J. *pro tem.*—Appeal from a judgment against the plaintiff, administratrix with the will annexed of the estate of F. B. Mathews, also known as Frank Berry

Mathews, deceased, in an action to recover certain disability benefits claimed to be due said decedent, the insured, in his lifetime, and certain premiums paid by the insured under a policy of insurance issued by the defendant, The Pacific Mutual Life Insurance Company, under a clause of said policy providing that said defendant would pay said decedent the sum of $100 per month should he, before attaining the age of sixty years and while the policy was in force, and no premiums in default, become "so disabled as to be totally and permanently unable to perform any work or engage in any occupation or profession for wages, compensation or profit, or suffer the irrevocable loss . . . of the . . . use of one hand and one foot," and in addition, said defendant would waive the payment of future premiums.

Another clause in the policy provided that should said insured, before attaining the age of sixty years, elect to cancel such benefit provisions, "a reduction in the annual premium of twenty-five cents for each Ten Dollar Unit of monthly payments" under such policy would thereafter be made.

The policy was issued May 12, 1923, and the insured paid the annual premiums of $366 until as of March 5, 1931, when said insured submitted to the insurer a written statement captioned "Preliminary Particulars of Total Disability," in which he claimed that "he had been totally disabled and continuously prevented from performing any work or engaging in any occupation or profession for wages, compensation, or profit, and that such disability began on December 27, 1930." Said defendant, upon receipt of such proof, paid to said insured the sum of $100 as of March 7, 1931, and a like sum monthly thereafter to and including January 1, 1932, and waived the annual premium due on May 12, 1931, "as and for claimed total disability benefits under the terms and conditions of such policy of insurance."

On February 10, 1932, an agreement in writing was entered into between the defendant insurer and the insured whereby in consideration of the sum of $500 paid by the insurer to said insured, the reduction by the insurer of the annual premiums required to be paid under such policy of insurance from $366 to $363.50 and the waiver by the insurer of the annual premium as reduced, to become due May 12, 1932, said insured acknowledged in writing full payment, satisfaction, discharge, compromise, and release of all claims on account of perma-

nent and total disability benefits under said policy of insurance growing or thereafter to grow out of alleged disability suffered on or about March 7, 1931, and it was further agreed that the total disability benefits under said policy of insurance were cancelled and entirely eliminated as of February, 1932, and said insured accepted from said insurer and retained the sum of $500, the waiver of the premiums due on May 12, 1932, and said reduction in the amount of said annual premium.

The reduced premiums were thereafter paid by said insured and the insurer made no further disability payments until December 1, 1936, when, under a written agreement entered into between defendants and the insured in November, 1936, under and by which written agreement, in consideration of the sum of $1,200, applied as a credit to a policy loan then outstanding against said policy of insurance, the resumption of said payments of $100 per month to begin as of said December 1, 1936, and to continue so long as said insured lived and remained permanently totally disabled, and the waiver of premiums under said policy of insurance so long as said payments continued, said insured "acknowledged full payment, satisfaction, discharge, compromise and release of all claims against defendants claimed to have accrued prior to December 1, 1936, on account of alleged permanent total disability benefits under said policy of insurance." The terms of said written agreement were fully complied with by the defendants to and including April 5, 1937, the date of the death of said insured.

The trial court found that on February 10, 1932, and on November 30, 1936, said insured was mentally competent, and as conclusions of law found that plaintiff was not entitled to recover and that defendants were entitled to judgment for their costs.

Plaintiff's complaint sought to recover the monthly payments not paid by defendants and the amount of the premiums paid by insured subsequent to said settlement of February 10, 1932.

In her complaint plaintiff prayed the court to declare any and all releases signed by the insured "void and without effect, due to the incompetency of the said insured to execute them, and due to the undue influence exercised over him by the defendant, or its authorized employees." The

complaint contains allegations to the effect that on or about March 1, 1931, said decedent submitted due proof of total and permanent disability, disabling him from "the performance of any work or engaging in any occupation or profession, or which caused him to suffer the *irrevocable* (loss of) *use of one hand and one foot.*" (Emphasis ours.) Such allegation is denied in defendants' answer, except that such answer admits and alleges that said decedent submitted to defendants a written statement in which decedent claimed that "he had been totally disabled and continuously prevented from performing any work or engaging in any occupation or profession for wages, compensation, or profit," and that such disability began December 27, 1930. The trial court found that such allegations in plaintiff's complaint were untrue except as to the allegation of due proof of permanent disability, and found that the allegations of the complaint that the settlement of 1932 (waiving the disability features of the policy) was the result of mental incompetency of decedent and undue influence exercised over him by defendant, were not true.

Plaintiff's contention throughout the trial was that the two releases given by the insured were the result of decedent's mental incompetence or undue influence.

■ Appellant contends here that the compromise of 1932 was void, even assuming decedent to have been mentally competent, as no new consideration passed, on the theory, apparently, that the company's liability under the disability provision of the policy was liquidated and that no honest dispute existed on the subject of insured's health or his right to benefits.

This new contention cannot be urged here. "The rule is well settled that the theory upon which a case is tried must be adhered to on appeal. A party is not permitted to change his position and adopt a new and different theory on appeal." (*Ernst* v. *Searle,* 218 Cal. 233, 240 [22 Pac. (2d) 715].)

■ Both releases were by written instruments, which are presumptive evidence of a consideration. (Section 1614, Civil Code.) ■ Nor do we agree that the ultimate and aggregate amount of the liability was liquidated. As long as the disability continued the defendant was compelled to pay the insured the amount fixed by the policy. Payments

were not required in the event of his recovery, however, and at the time the settlement was made in 1932, no one could tell when that event would occur. As a matter of fact, defendants then contended that such event had already occurred, and at the time of such settlement there was a serious dispute as to whether any more payments were due under the policy. The date of the death of insured was uncertain at that time. The payment of $100 that would have been due insured February 1, 1932, was not made. On February 10, 1932, the first release was executed. At that time defendant company gave decedent a check for $500, and insured executed a receipt for that amount in full payment, satisfaction and discharge of all claims of himself, his heirs and assigns, that then had accrued or might thereafter accrue against defendant on account of such total disability benefit clause of his policy of insurance, "growing or to grow out of alleged disability suffered by myself on or about 3/7/31," and it was agreed therein that such total disability provision of such policy should be eliminated and that premiums thereafter coming due under such policy should be reduced by $2.50 per annum, and that the annual premium in the reduced amount, due May 12, 1932, would be waived by the company. Therefore, at a time when only $100 was unpaid on the disability installments, $500 was paid and other valuable considerations were given insured by the company for such release, so there is no merit in such contention of appellant.

▮ It appears from the evidence that the insured did not cash the check for $500 given him on February 10, 1932, and appellant urges that because of that the agreement was void. The check was given insured. He could have cashed it so far as anything appears. Any delay was his own fault, which could not be charged to defendants. It appears, too, that on May 23, 1932, said insured, not having been able to find his policy of insurance until after February 10, 1932, took it to the home office of insurer, to be properly endorsed eliminating the permanent total disability clause. The policy, properly endorsed, was returned to decedent.

Appellant states in her brief that, "Broadly speaking, the single issue presented . . . is the validity of the alleged compromises," and that such issue involves consideration of whether or not, (1), the compromises, as a matter of law,

constitute an accord and satisfaction; and, whether or not, (2), Mathews was competent, as a matter of fact, to enter into the agreements.

It is apparently appellant's contention that the court erred in failing to find that the insured from January 1, 1931, until his death, was, as a matter of fact, permanently and totally disabled. Her argument is not clear, but we gather that it was advanced because of the finding of the court that the insured, during all of such period ''was unable to use his left arm and left leg,'' and apparently it is assumed by appellant that such finding is equivalent to a finding that insured did suffer the irrevocable loss of the use of one hand and one foot, which, under the policy, would have entitled the insured to the disability provisions even in the absence of a showing of total disability.

Insured suffered a paralytic stroke in December of 1930, which paralyzed his left arm and left leg and slightly affected his speech.   Even assuming that the evidence showed that the insured suffered a total disability, we fail to see where that is material on this appeal if the two releases are valid, or if only the release of November 30, 1936, is valid.   If the insured was not incompetent, or acting under undue influence at the time he executed the release, he had a perfect right to make any contract with the defendant company which he desired.

It is undisputed in the record before us that the insured made no effort at any time to rescind the release agreement of 1932 or that of 1936, in which he released all claims against defendant which he claimed had accrued prior to December 1, 1936; that plaintiff witnessed the execution of such last mentioned agreement, and made no attempt to rescind either of said release agreements until June 1, 1938.

The situation presented by such undisputed facts could well have been considered by the trial court as inconsistent with incompetency on the part of insured.

Other evidence offered in support of any asserted undue influence or of incompetency simply resulted in a conflict, and the inferences that were to be drawn from a showing of undue influence or incompetence under such circumstances were for the trial judge who found against such claim.   Such a finding cannot be disturbed on appeal for well known reasons that require no citation of authority.

Assuming that the reasons given by plaintiff's witnesses support the opinions given as to competency, at the best there is a conflict in the evidence on such question, and we cannot say that the trial court erred in its findings.

Judgment is affirmed.

York, P. J., and Doran, J., concurred.