[Civ. No. 14011.   Second Dist., Div. Two.   June 8, 1943.]

GEORGE YOUNIS et al., Respondents, v. ALFRED E. HART et al., Appellants.

Roland T. Williams for Appellants.

D. Chase Rich for Respondents.

MOORE, P. J.—Defendants appeal from a judgment of rescission on account of their alleged fraud in the sale of real and personal property. Their contentions though otherwise expressed are encompassed within the following: The evidence does not support the findings and the findings do not support the judgment; the notice of rescission is inadequate; plaintiffs were guilty of laches; and the judgment does not dispose of the case completely.

From the findings we glean the story that culminated in this appeal. On December 11, 1941, defendants, husband and wife, were the owners of lots H and 24, two adjacent parcels in the city of San Gabriel together with all the improvements thereon and the furniture in the residence. Those two parcels will be discussed herein as the lot. Alfred Hart was a realtor and Beatrice was his wife. In order to induce plaintiffs to purchase the lot and the moveable property, defendants represented and stated to plaintiffs that the realty had a frontage on Valley Boulevard of 110 feet; that its easterly line was about 7 feet east of the easterly side wall of the building at the rear which was formerly used as a dance hall. Such statement was believed by plaintiffs, but it was untrue. The frontage was only 102.79 feet. It was also represented that the state and county annual taxes on the realty was $100, whereas in truth it was $157.34.—Inasmuch as we have concluded that the representation with reference to the taxes was immaterial and that plaintiffs had notice of the true amount at the close of the transaction we shall take no further notice of that particular statement.—The representation with respect to the frontage of the lot was willfully made by defendants for the purpose of defrauding plaintiffs and of inducing them to purchase the property.

By the terms of sale agreed upon, plaintiffs assumed an indebtedness secured by the property in the sum of $3,096.07 in favor of a building and loan association, payable in monthly installments of $35; executed their promissory note in favor of defendant Alfred in the sum of $1,803.93 with interest payable in monthly installments of $20 each and also a second

trust deed of the lot to secure the payment of such note. They paid in cash the sum of $500. The aggregate of their cash and their note and the note secured by the first lien was $5,400, the purchase price. In return for the foregoing, de-fendants executed and delivered to plaintiffs a grant deed conveying the real property and Alfred delivered his bill of sale conveying the furniture. Plaintiffs entered into and occupied the property about December 20, 1941, and there-after made four payments to the building and loan associa-tion and four payments to defendants on the second lien. Although plaintiffs stated to Alfred Hart at their first meet-ing their plans for remodeling the dance hall into two living apartments for rental purposes he did not deign to correct his former statement that the frontage was 110 feet. Neither did he allude to the impossibility of extending the structure to the eastward. After the occupancy by plaintiffs, it devel-oped that the frontage of the lot on Valley Boulevard was only 102.79 feet.

In January, 1942, plaintiffs applied to the city for a permit to remodel the dance hall into living apartments and paid an architect $35 to supervise the work. But on April 23, the permit was denied for the reason that the easterly line of the dance hall was flush with the easterly line of the lot and that "under the ordinances then in force, apartments for human habitation were required to be constructed with at least three feet of light and ventilation between the building and the property line." Upon learning the exact frontage of the lot from the denial of the permit, plaintiffs offered in writing to restore to defendants the possession and title of both the real and personal property, upon the return of all moneys paid as a result of their acquisition of the property and upon the cancellation of all instruments evidencing their liability. Defendants having refused to cancel the documents or to refund any of the money paid out by the plaintiffs on account of the purchase, plaintiffs vacated the property about June 1, 1942. Having occupied the premises for 5½ months, plaintiffs were assessed the sum of $165 on the basis of $30 per month for such occupancy.

Based upon such findings it was adjudged that the promis-sory note and trust deed executed by plaintiffs to the de-fendant, Alfred, and the bill of sale and the grant deed to plaintiffs and all other agreements of the parties obligating plaintiffs to pay moneys to or for the use of defendants be cancelled and that plaintiffs should recover the sum of $844.93

less $165, with interest from the several dates of payment, aggregating $29.39.

■ Before discussing the general merits of the appeal it will be in order first to consider the status of Beatrice O. Hart under the judgment. There is no substantial basis for the award against her. She took no part in the transaction. She neither made a representation nor signed the escrow instructions. While it is true that she signed the grant deed conveying the property to plaintiffs, that was evidently done in compliance with the demands of her husband under advice that her signature was indispensable to a perfect title. The only fact that would justify an inference that she had an interest in the real property was that the title stood in the name of her husband which might indicate its community character. But Alfred received the cash payment and caused the note and trust deed securing it to be made payable to himself as his "separate estate." In view of these facts and of the presumption of innocence of Mrs. Hart we must conclude that the evidence is insufficient to warrant a finding against her. We conclude therefore that the judgment against Beatrice O. Hart is wholly without support and should be reversed. Alfred Hart will hereafter be referred to as the defendant.

■ The representation that the area of the lot was 110 feet by 300 feet indicated that the surface contained 2,163 square feet more than its actual content. While such an exaggeration of the acreage of a cotton plantation might be unimportant, yet in the purchase of a city lot, a statement that its area is that much greater than its exact measurements is material and goes directly to the heart of the transaction.

■ Moreover, his statement that the easterly line of the lot was seven feet east of the easterly concrete wall of the ex-dance hall while in fact it was flush with the east wall thereof was itself a material misrepresentation and it was sufficient to justify a rescission. A single material misstatement knowingly made by a vendor and relied upon by his vendee will warrant a rescission with damages. (*Davis* v. *Butler*, 154 Cal. 623 [98 P. 1047].) Also, the precise amount of damage suffered in a fraudulent transaction is not the important factor. The fraud is the essential element, if its victim is only in a worse position by reason thereof. (*Munson* v. *Fishburn*, 183 Cal. 206, 216 [190 P. 808].) The proof was that plaintiffs made it clear to defendant in the course of their negotiations

that they intended to reconstruct the concrete hall into apartments for rental purposes. This made the exact location of the east line of paramount importance by reason of the city's requirements.

Defendant knew his statment was untrue. He had acquired the property in March, 1941. At that time he learned that the dimensions of the parcel were 300 feet by 102.79 feet and that the easterly line of the lot was flush with the easterly line of the dance hall. Notwithstanding that Alfred knew that the property was no more than $\frac{2}{3}$ of an acre, he advertised it for sale in a local newspaper as an acre. After the plaintiffs had entered into and occupied the property, defendant visited plaintiffs and, assisted by Mr. Scheel, he again measured the property with the aid of a tape measure and again announced that the length of the lot's 110 feet along the boulevard went seven feet beyond and to the east of the dance hall.

■ Plaintiffs relied upon the representation in making the purchase. Both testified that they believed, and relied upon, the statement. The fact that plaintiffs visited the property and walked over it to make an inspection does not necessarily determine that they depended upon their own observation in determining the area of the lot. From the testimony of plaintiffs and their broken English it is evident that they were not only foreign born, but that they were slightly, if at all, past the status of illiterates. Moreover, it does not require one to be densely ignorant in order to be induced readily to believe that the area of a parcel of ground is 300 feet by 110 feet while in truth its width is only 102.79 feet. No eyes are so trained as to make at a glance an accurate survey or a reliable estimate of such an area of land. (*Quarg* v. *Scher,* 136 Cal. 406 [69 P. 96].) Upon this lot, two houses stood to give added hindrance. So long as plaintiffs placed their faith in the statements of defendant, their walking upon the premises with him does not diminish the significance of his statement as a misrepresentation of the area of the lot. It was defendant's land and it was therefore his duty to know its boundaries before attempting to sell it. Plaintiffs' casual inspection did not relieve defendant of his obligation to speak with accuracy. ■ In the purchase of land the buyer has the absolute right to rely upon the express statement of the seller concerning an existing fact the truth of which is known to the vendor and unknown to the vendee. (*Shearer* v. *Cooper,*

21 Cal.2d 695, 704 [134 P.2d 764]; *Neff* v. *Engler,* 205 Cal. 484 [271 P. 744]; *Dow* v. *Swain,* 125 Cal. 674 [58 P. 271].) In order for these plaintiffs to have learned independently the exact frontage of the lot it would have been necessary for them to make use of scientific devices. They made no pretense at a measurement. Having relied upon the word of defendant, their walking upon the premises before the purchase did not impair their right gained by such reliance. (*French* v. *Freeman,* 191 Cal. 579, 587 [217 P. 515].) ■ The mere fact that the opportunity and means for ascertaining the exact frontage were available to plaintiffs does not defeat their right of recovery. (*Brown* v. *Oxtoby,* 45 Cal.App.2d 702, 706 [114 P.2d 622].)

■ It is thus seen that there was substantial proof that the representation was made; that it was material; that it was relied upon; and that it was false and was uttered with knowledge of its falsity. Under such circumstances plaintiffs were entitled to rescind. Their success in effecting a rescission would depend only upon the promptness with which they would act and the content of their offer. This is what occurred: Immediately upon being apprised of the exact frontage on Valley Boulevard, plaintiffs consulted with attorney Rich who promptly directed a letter on April 23, 1942, to defendant advising him of the discovery of the damage plaintiffs would suffer in the sum of $1,035 by reason of their inability to remodel the dance hall because it is flush with the property line, and of the expense plaintiffs had incurred in improving the property, and suggested a friendly rescission and payment of their damages. A kindly approach attempting to effectuate the settlement of an ugly controversy is not to be discouraged because the first communication did not formally demand a rescission. Indeed the response thereto gave approval to the friendly overture. In his reply, Mr. Williams, counsel for Hart, six days later, on April 29, stated that he had required more facts from Mr. Hart and requested of Mr. Rich additional information relative (1) to the improvements made by plaintiffs and (2) to the nature of the permit sought at San Gabriel. Two days later, May 1, Rich's letter complied fully with the request of Williams who on May 7 wrote Rich giving the frontage of the lot on Valley Boulevard as 102.79 feet and stated that according to the written contract plaintiffs had purchased the lot without mention of the width; that defendant had made no representa-

tion about the frontage; that if he had done so, such "oral negotiations would be merged" in the writing; that plaintiffs got what they bought and therefore Hart was not liable. Promptly upon receipt of such letter, plaintiffs forwarded to defendant their formal notice of rescission of the purchase because of the misrepresentations. They declared that they renounced all agreements theretofore made regarding the purchase of the lot; that they were moving from the property; that they would make no further payments to defendants or to the building and loan association. They demanded the payment of damages in the sum of $1,035. Also they offered to reconvey upon receipt of their damages and the cancellation "of all instruments of liability." To such formal notice Williams replied and asked that he be advised of the day plaintiffs would move, that Mr. Hart might inspect the furniture and receive the keys. This recital disposes of the defense of laches. Under the circumstances wherein plaintiffs found themselves on a property they deemed to be that of another and their ready money in his hands, their rescission was not tardy; nor did they delay to his detriment.

The notice of rescission substantially complies with the requirements of the law. (Sec. 1691, Civ. Code.) It recites the fraud "explained in prior letters"; denied all liability on the two notes; announced plaintiffs' readiness to deliver the furniture and to reconvey the title of the lot upon condition that plaintiffs be placed *in statu quo*. The demand for damages in the sum of $1,035 and other informalities of the notice of rescission were cured by defendant's prior denial of the fraud and his refusal to rescind. (*Lanktree* v. *Spring Mountain Acres, Inc.*, 213 Cal. 362, 366 [2 P.2d 338].) Inasmuch as defendant denied the fraud and all liability, the mention in the notice of a sum which was later established to be in excess of their damage was harmless. The essential thing was that plaintiffs demanded rescission and damages and that thought was conveyed.

The judgment comprehends all the issues. It cancels defendant's deed, the bill of sale and plaintiffs' promissory note in favor of Alfred Hart. It orders the return of the furniture upon defendant's payment of the sums adjudged to be due to plaintiffs.

Finally, the amount of the judgment is questioned. The items given in the testimony from which the court derived the finding of the amount of the award are as follows:

(1) Cash paid on purchase price, $500; (2) payments to the Building and Loan Co., $140; (3) payments on note to defendant, $80; (4) title charges, $93.69; (5) architect for plans to remodel dance hall, $35; (6) interest on foregoing, $29.39. This aggregates $878.08. After subtracting the value of plaintiffs' occupancy as found by the court's inspection of the premises in the sum of $165, leaves $713.08 which is in excess of the judgment for $679.93. Notwithstanding this is less than the total of the above items, yet it contains a charge which is specifically included and must be expressly eliminated. Interest on an unliquidated claim begins to run only from the date of judgment. (*Culjak* v. *Better Built Homes Inc.*, 58 Cal.App.2d 720 [137 P.2d 492].)

It is therefore ordered that the judgment against Beatrice O. Hart be reversed with instructions to enter judgment in her favor; that the residuary judgment against Alfred E. Hart be modified in one particular only, to wit: by reducing the amount from $679.93 to $650.54, with interest from date of judgment, and as so modified the judgment against him is affirmed. Appellants shall recover their costs on appeal.

Wood (W. J.), J., and McComb, J., concurred.