[Civ. No. 14492.   First Dist., Div. Two.   Jan. 26, 1951.]

L. P. KANTLEHNER et al., Respondents, v. GABRIEL BISCEGLIA et al., Defendants; JAMES A. CLAYTON AND COMPANY (a Corporation) et al., Appellants.

Rankin, Oneal, Luckhardt, Center & Hall for Appellants.

Campbell, Hayes & Custer and Bronson, Bronson & McKinnon for Respondents.

DOOLING, J.—Plaintiffs had judgment against appellants for $12,000 awarded by a jury for fraudulent representations in the sale of an orchard property for the contract price of $72,000 which was reduced to $68,885 by the adjustment later referred to. The property was represented to contain 65.86 acres but when the title report was received by appellants it developed that it contained less than 61 acres and a survey showed the exact acreage to be 60.702. Appellants, who are the real estate agents who handled the transaction, sought to prove that plaintiffs had knowledge of the shortage in acreage

before the completion of the transaction, but plaintiffs denied this and the jury chose to believe plaintiffs. Appellants attempt to reargue the weight and effect of the evidence but no useful purpose would be served in our going further into the facts since all conflicts are to be resolved and all reasonable inferences to be indulged in support of the jury's verdict.

One of the appellants testified that plaintiff Kantlehner stated to him "if there aren't sixty-five acres in it, we won't put up the money to close the deal," and the materiality of the representation of the acreage to them was testified to by both Kantlehner and Cali. There is therefore nothing in the point attempted to be made that the purchase was one in gross without regard to acreage. (*Shearer* v. *Cooper*, 21 Cal.2d 695, 701 [134 P.2d 764]; *Younis* v. *Hart*, 59 Cal.App. 2d 99, 103 [138 P.2d 323]; *Lombardi* v. *Sinanides*, 71 Cal.App. 272, 277 [235 P. 455]; *Odson* v. *Swanson*, 70 Cal.App. 279, 282 [233 P. 354].)

Appellants argue that in accepting a deed without reading it, which deed showed on its face the acreage actually conveyed, the plaintiffs are barred by their own negligence from a recovery. In support of this argument appellants rely heavily on *Sisk* v. *Caswell*, 14 Cal.App. 377 [112 P. 185]. If that case, which has apparently never since been cited on this point, stands for the principle that failure to read a document which would disclose the true facts is an absolute bar to recovery in a case of this nature it is out of line with a host of California cases. The correct rule is rather that whether the failure to read a document is such negligence as to bar relief is ordinarily a question for the trier of fact. (*National Auto. & Cas. Co.* v. *Industrial Acc. Com.*, 34 Cal.2d 20, 26 [206 P.2d 841]; *California Packing Corp.* v. *Larsen*, 187 Cal. 610, 613-614 [203 P. 102]; *Los Angeles & Redondo R. Co.* v. *New Liverpool Salt Co.*, 150 Cal. 21, 27-28 [87 P. 1029]; *Travelli* v. *Bowman*, 150 Cal. 587, 590-591 [89 P. 347]; *Mills* v. *Schulba*, 95 Cal.App.2d 559, 564-565 [213 P.2d 408]; *Tieso* v. *Tieso*, 67 Cal.App.2d 872, 877 [155 P.2d 659]; *Hanlon* v. *Western Loan & Bldg. Co.*, 46 Cal.App.2d 580, 597-598 [116 P.2d 465].) Particularly is this true where the failure to read is induced by reliance upon the fraudulent representations of the other party. (*Security-First Nat. Bank* v. *Earp*, 19 Cal.2d 774, 777 [122 P.2d 900]; *Glickman* v. *New York Life Ins. Co.*, 16 Cal.2d 626, 631 et seq. [107 P.2d 252, 131 A.L.R. 1292]; *Fleury* v. *Ramacciotti*, 8 Cal.2d 660, 662 [67

P.2d 339]; *California Trust Co.* v. *Cohn,* 214 Cal. 619, 627 [7 P.2d 297].)

On cross-examination the plaintiff Cali was asked:

"Q. In other words, you bought a piece of property for the sum of seventy-two thousand dollars and you weren't sufficiently interested to read any of the documents pertaining to the transaction?" He replied: "A. I felt that I was dealing with people that had integrity on whatever they told me. I relied on what they told me and I have always done that."

It was within the province of the jury to determine whether plaintiffs' failure to read the deed was reasonably excused by their reliance upon appellants' representations.

■ Appellants argue strenuously that no proper evidence appears in the record to support the award of damages to plaintiffs in the sum of $12,000 and that the award in that amount is grossly excessive. An examination of the record satisfies us that this argument is not open to appellants on this appeal by reason of their conduct of the case in the trial court.

It is true that under section 3343 Civil Code the "out-of-pocket" rule is the correct measure of damages in cases of this character (*Oliver* v. *Benton,* 92 Cal.App.2d 853, 854 [208 P.2d 375]) i. e., the difference between the price paid and the market value of the property received. The only evidence on the subject of damages was given by the plaintiff Cali (neither the appellants nor the other defendants introduced any evidence on the subject of damages):

"Q. . . . Mr. Cali, forgetting all about this adjustment that was made, for other matters, storm damage and equipment and so forth, what is your opinion of the value of that ranch consisting of somewhere between sixty and sixty-one acres, as of the time you bought it; that is, what is your opinion of the value of the ranch that you got? A. Well, I wouldn't have paid over sixty thousand dollars for it."

Appellants now assert that at most this is a statement not of market value but of value to the purchaser Cali and to make it the measure of damages is to adopt the "benefit-of-the-bargain" rule instead of the "out-of-pocket" rule established by Civil Code section 3433. The answer was given in response to the question "what is your opinion of the *value* of the ranch that you got?" The answer by a layman "I wouldn't have paid over sixty thousand dollars

for it'' might well be intended by him as equivalent to saying: ''Its value is not over sixty thousand dollars'' and be so understood by the jury.

No motion to strike the answer on the ground that it was not proper evidence of value, or on any other ground, was made and later on cross-examination the cross-examiner assumed that the answer was testimony of value. We quote from the record:

''Q. You have testified as to market values. You are a qualified witness: you own the land. How much is five acres of that land worth?''

It is true that this question was asked by counsel for the defendant title company, but counsel for appellants not only left the cross-examination of Cali to this attorney, but just two pages before the page on which the last quoted statement and question appears in the transcript counsel for appellants successfully argued to the court in support of a question asked by the same cross-examiner of the same witness.

Particularly significant is the following, all of which was brought out on cross-examination, with no objection or motion to strike from counsel for appellants:

''Q. Well, how much were those damages?

''A. Well, I said at that time, if I—if the ranch was just like I found out it was afterwards, I wouldn't have paid over sixty thousand dollars for it. That is my answer.

''Q. Well, how much are those damages?
''A. Well, at that time—at that time, as I stipulated, my counsel asked me and I said, 'If I know what I know now, I wouldn't have paid over sixty thousand dollars.'
''Q. I see. And you did pay on a basis of seventy-two thousand dollars, is that right? A. Yes.
''Q. So you figure damages twelve thousand dollars? A. Yes.
''Q. Is that correct? A. Yes.''

Thus on cross-examination the answer ''I wouldn't have paid over sixty thousand dollars'' was twice repeated by the witness and then the figure $12,000 was planted in the minds of the jury by a leading question, all without objection or motion to strike from appellants' counsel.

The only instruction on damages given by the court was in the following language:

''If you find that plaintiffs have established the allegations

of their complaint . . . and . . . have sustained damages . . . I instruct you that you should award plaintiffs a verdict for an amount equal to the damages which you find plaintiffs have sustained as a result thereof, provided, however, that your verdict must not exceed the sum of $25,000, which is the amount of the prayer of plaintiffs' complaint."

Not only was no instruction on the "out-of-pocket" rule requested by appellants or any other party, but it does not appear from the transcript at whose request the quoted instruction on damages was given. ▮ ▪ Where the record is silent on the subject, in support of the judgment "we must presume that such instructions were given at defendants' request." (*Deevy* v. *Tassi*, 21 Cal.2d 109, 124 [130 P.2d 389] and cases cited; *Downey* v. *Bay Cities Transit Co.*, 94 Cal. App.2d 373 [210 P.2d 713]; *Blythe* v. *City and County of S. F.*, 83 Cal.App.2d 125, 132 [188 P.2d 40].)

▮ Counsel may not so conduct themselves in the trial of a case as to lead the jury to proceed upon one theory and then seek to abandon that theory upon appeal and adopt another one. (*Graddon* v. *Knight*, 99 Cal.App.2d 700, 705 [222 P.2d 329]; *Ernst* v. *Searle*, 218 Cal. 233, 240-241 [22 P.2d 715]; *Mathews* v. *Pacific Mut. Life. Ins. Co.*, 47 Cal.App. 2d 424, 428 [118 P.2d 10]; 2 Cal.Jur. 237.) ▮ This rule has frequently been applied where one theory of damages was acquiesced in at the trial and appellants sought to shift to another theory of damages on appeal. (*Wolfsen* v. *Hathaway*, 32 Cal.2d 632, 646 [198 P.2d 1]; *Grupe* v. *Glick*, 26 Cal.2d 680, 691 [160 P.2d 832]; *Gibson Properties Co.* v. *City of Oakland*, 12 Cal.2d 291, 298-300 [83 P.2d 942]; *Kaufman* v. *Tomich*, 208 Cal. 19, 26-27 [280 P. 130]; *Wharam* v. *Investment Underwriters*, 58 Cal.App.2d 346, 350 [136 P.2d 363].)

Not only is it to be presumed that the single instruction on damages, sketchy as it was, was given at appellants' request but after failing to request an instruction on the "out-of-pocket" rule appellants have no standing to complain before us that the jury was not more adequately instructed on the measure of damages. (*Perry* v. *City of San Diego*, 80 Cal. App.2d 166, 171-172 [181 P.2d 98].) On the whole record appellants are in no position to attack the damages allowed by the jury.

Appellants point out that by reason of an adjustment for damage by flood and shortage in equipment the amount actually paid by plaintiffs was reduced to $68,855 and argue that even under Cali's testimony an award of $8,855 is the

maximum that could be supported. But the question asked Cali on direct was *"forgetting all about this adjustment* that was made, for other matters, storm damage and equipment and so forth, what is your opinion of the value of that ranch . . . ?"* The fair construction of the answer to this question as so qualified is that if there had been no storm damage and no shortage of equipment the witness would not have paid over $60,000.

On cross-examination Cali testified that sold by the acre the land would be worth $1,200 per acre. He qualified this answer "without those other reservations that I put in there though." This referred to his testimony that 5 acres as part of a 65-acre tract is more valuable because "our equipment and our overhead is always the same and practically our cost is, and if we are farming we can pay our expenses on five acres. . . .

"Q. Well, if I understand you correctly then, you feel your margin of profit on additional five acres would be higher than on the other acres? A. Oh, yes, sure. No question about that."

The total effect of this evidence was for the jury to determine.

Whether, as appellants claim, there was no evidence that the county had an easement on the land conveyed need not be decided, because Cali testified that he could not estimate the effect of the easement on the value of the property and it is clear from the record that in his testimony as to damages above quoted Cali was restricting himself to the shortage in acreage alone.

Judgment affirmed.

Nourse, P. J., and Schottky, J. pro tem., concurred.

Appellants' petition for a hearing by the Supreme Court was denied March 26, 1951. Schauer, J., voted for a hearing.