No. 25,794.

WILLIAM SHUNK et al., *Appellees*, v. JOSEPH P. FULLER et al., *Appellants*.

SYLLABUS BY THE COURT.

1. VENDOR AND PURCHASER — *Mistake as to Quantity — Sale by Unit of Area.* When real property is sold or exchanged on an acreage basis, and the grantor positively represents an irregular tract to contain a specified acreage, and it is clear he intended the grantee to have as much as the number of acres specified, a shortage of 2.26 acres on a tract of 244 acres is not too small to take into account.

2. SAME—*Encumbrances on Land—Ice Lease.* An ice lease, granting to the lessee the privilege of taking the natural ice from a non-navigable stream on land owned by the lessor, with a right of ingress and egress over a part of the land for the purpose of harvesting and marketing the ice, for a term of ninety-nine years, and which by its terms is "binding upon the heirs, executors, administrators and devisees and assigns" of the parties, and which is duly acknowledged and recorded, is an encumbrance upon the land.

Appeal from Mitchell district court; WILLIAM R. MITCHELL, judge. Opinion filed June 6, 1925. Affirmed.

*Frank A. Lutz,* and *Amzie E. Jordan,* both of Beloit, for the appellants.

*E. T. Riling, John J. Riling,* both of Lawrence, *R. M. Anderson,* and *J. F. Finch,* both of Beloit, for the appellees.

The opinion of the court was delivered by

HARVEY, J.: This action grew out of an exchange of lands. The plaintiff sued to recover a part of the purchase price paid because of a shortage in acreage, and for damages for breach of the covenant against encumbrances, the encumbrance complained of being what is called an "ice lease" with the right to pass over a part of the land to and from the river for the purpose of harvesting and marketing the ice. It was tried to a jury, which made findings of fact and returned a verdict for plaintiff. The defendant has appealed.

The plaintiff, William Shunk, owned a farm in Johnson county. 'The defendant, Joseph P. Fuller, owned a farm near Beloit, in Mitchell county. An exchange of farms was arranged through Mr. S. A. Dickson, a real-estate agent of Beloit. Both parties were positive in representing to the other the acreage of their respective farms. The plaintiff represented his Johnson county farm as 199 acres, being 200 acres, as shown by the government survey, less one acre which had been sold for the Grange hall. The defendant repre-

sented his farm, which was bounded on the north and partly on the west by the Solomon river, and which was irregular in its windings, as containing at least 244½ acres. For the purpose of the trade the plaintiff's land was figured at $160 per acre, though at first it was priced at $200 an acre, and the defendant's land at about $163.50 per acre, which made a difference of $8,000 in the value of the farms, which sum plaintiff was to pay in cash to defendant.

Both properties were to be conveyed by general warranty deed, free and clear of encumbrances, and abstracts furnished. When the parties agreed upon the trade they went to a bank at Beloit, where a contract was drawn from information furnished by the parties. This contract recites that the tracts to be conveyed by defendant to plaintiff contained "244 acres, more or less, according to the survey thereof." At the same time a deed was drawn from defendant to plaintiff. The descriptions in the deed were taken from some old title papers, and described the land in four tracts or parcels, only one of which made any mention of the acreage. In order to complete the payment of the $8,000 difference, plaintiff desired to get a loan on the Mitchell county land, for which an application was made to a loan company, a temporary loan for a part of the amount being made at the bank to enable plaintiff to close the deal.

After defendant went into possession of the Johnson county land he discovered a road across the end of one 80-acre tract, which had not been pointed out to him by plaintiff. He computed the amount of land taken by this road at one-half acre, and called upon plaintiff to pay him $100 because of this shortage in acreage, computing it at $200 per acre, the price plaintiff first placed upon it. Apparently acknowledging his liability therefor, plaintiff deposited $100 in the Beloit bank, but for some undisclosed reason this was not delivered to defendant.

The loan company required a survey of the Mitchell county farm in order to ascertain the acreage before completing the loan. This survey showed 233.05 acres. The abstract also disclosed the "ice lease." Plaintiff asked defendant to pay for the shortage of acreage, and also asked damage for the encumbrance of the ice lease. The defendant declined to comply with this request, and plaintiff brought this suit. In plaintiff's petition he sought to recover for a shortage in acreage of 11.45 acres at $163.50 per acre. He also sought to recover damages because of the encumbrance made by the ice lease. Defendant denied liability, and by way of cross petition sought to recover $100 for the shortage of one-half acre in the John-

son county farm, and also set up that the quality of the Johnson county land had been misrepresented to him by plaintiff, to his damage in the sum of $5,000, which he sought to recover.

At the trial there was much evidence concerning the acreage of the Mitchell county land. Two surveys of it had been made. The jury found that defendant had sold it to plaintiff on the basis that there were 244½ acres, and in arriving at the value of the respective tracts on the trade, this land had been figured at $163.50 per acre. They found there was a shortage of 2.26 acres, and allowed plaintiff for that at the rate of $163.50 per acre. They also found for defendant, on his cross petition, $100, being for a shortage of one-half acre in the Johnson county land. Nothing was allowed defendant on his cross petition for damages for misrepresentation of the quality of the land, and no complaint is now made of that ruling. The jury also found in favor of plaintiff in the sum of $1,500 for damages because of the ice lease on the Mitchell county land. Judgment was rendered in accordance with these findings and the defendant has appealed.

Appellant contends that the deficiency in acreage of the Mitchell county land was insufficient in amount to constitute a breach of warranty as to such acreage as would justify an allowance for damages for shortage. The finding of 2.26 acres shortage was less than one per cent of the whole acreage of the Mitchell county farm. There might be some merit to this if defendant had not claimed from plaintiff compensation for a shortage of one-half acre on the 199-acre Johnson county farm. It seems clear from the record as a whole that each of the parties was positive in assuring the other of the number of acres in his farm, and traded, knowing that the other relied upon such representations. In view of that, we see no reason why a discrepancy of 2.26 acres should not be taken into account. Certainly the parties could agree to do so if they so desired, and if it was their real intention to represent and guarantee to the other a specified number of acres, there was nothing wrongful or illegal in their doing so, and there is no reason why the court should not carry out their intention.

Appellant argues that what was said before the contract was written at the bank merged into the contract and deed. At the trial the plaintiff was required to elect whether he would rely upon representations made prior to the execution of the contract or rely upon the contract and deed. While objecting that he should be required to

make such an election, he did elect to rely upon the contract and deed. The contract, after describing the real property, recited that it contained "244 acres, more or less, according to the survey thereof." The deed described the real property in several parcels, but did not give the acreage of the entire land conveyed. The court admitted evidence of the circumstances and dealings with the parties at the time the contract was executed and prior thereto for the purpose of getting at the meaning of the ambiguous words "244 acres, more or less, according to the survey thereof," contained in the contract, and for no other purpose. There had been no survey of the land prior to making the contract, though part of it had been measured with binding twine. The jury found in effect that the words meant as much as 244 acres, and the evidence is abundant to support that finding. From the testimony of the defendant it is clear that he represented that there was really more land, that he paid taxes on 246½ acres, and that he thought the section was large, and that he gave positive assurance there were 244½ acres, and that he intended at the time the trade was made, and still intended, plaintiff to have that much land.

Appellant contends that even if it was proper to allow plaintiff for a shortage of 2.26 acres, it was improper to figure the value of it at $163.50 per acre, for the reason that this was an exchange of lands rather than a purchase of lands. It is argued that perhaps both tracts were valued high for the purpose of trade, and that the jury was not justified in making an award in money when plaintiff was only to give land. There is no merit in this contention. Plaintiff was giving land and money, on the assurance that he was receiving 244½ acres. Now if the acreage was not that much, he would have conveyed to defendant the same quantity of land, but the amount of money paid to him would have been decreased. Defendant's position is not very consistent. He asked money for the shortage of acreage on the Johnson county land, and that was allowed to him in money. He can hardly say that he is entitled to receive money for the shortage of land, but that plaintiff is not.

Appellant contends that no allowance should have been made because of the ice lease. That requires us to examine that instrument, which reads as follows:

"This indenture made this 26th day of February, 1908, between August Haneberg, party of the first part, and J. F. Douglass and W. J. Douglass, said August Haneberg being an unmarried man, said August Haneberg being the lessor and said J. F. Douglass and W. J. Douglass being the lessees;

"Witnesseth, that said lessor, in consideration of the sum of one dollar and other valuable considerations to him moving, does hereby lease and let unto the said lessees the following described premises, situated in Mitchell county, Kansas, to wit:

"Commencing at the point where the center line running north and south through section eight in township seven south of range seven west first strikes and intersects the center line of the Solomon river, thence down and along the center line of the channel of said river in an eastwardly by southeasterly course for the distance of eighty rods, thence southwardly to the south bank of the channel of said river, thence up and along said south bank of said channel of said river to a point on the said center line of said section eight south of the point of beginning and thence north to the point of beginning, for the term commencing at the date hereof and ending at the expiration of the period of ninety-nine years from and after the date hereof, said lease and right to be for and of the right and privilege of cutting, taking, harvesting and packing natural ice from that portion of the channel and stream of said Solomon river and territory and premises hereinbefore described, and said party of the first part does hereby grant and assure to said parties of the second part due and convenient access to the property hereinbefore described, with all necessary appliances and employees in such time of the year as it shall be fit and necessary to gather and save said ice, upon and over any land owned by him at the time of the execution hereof.

"And this contract shall be binding upon the heirs, executors, administrators and devisees and assigns of the party of the first part and of the parties of the second part hereto.

"In witness whereof the said parties have interchangeably set their hands the day and year hereinbefore first written.          AUGUST HANEBERG.

J. F. DOUGLASS.

W. J. DOUGLASS."

This was acknowledged. It bore the written consent of Minerva E. Barger, a purchaser of the land from Haneberg, and was filed for record July 8, 1909. The history of the giving of this instrument, in so far as it is material here, is as follows: J. F. and W. J. Douglass owned land in section 8. About forty-four acres of this was south of the Solomon river, a non-navigable stream. They sold this tract south of the river to August Haneberg, the center of the stream being the north boundary of the land conveyed. They were engaged, and had been for many years, in the ice business, supplying the city of Beloit with natural ice, and had a large ice house north of the river on the land which they owned, and the title to which they retain, where the ice was put up in the winter for distribution in the summer. To be assured of having a supply of ice to fill their ice house, and possibly to keep others from going in the business in competition with them, when they sold this about forty-

four-acre tract south of the river to Haneberg they required, as a part of the consideration of the sale, that Haneberg should convey to them an ice lease on the half of the river that naturally went with the tract of land sold, for a term of ninety-nine years. The instrument above set out was executed by Haneberg in accordance with that arrangement. Haneberg sold the about forty-four-acre tract to Minerva E. Barger, and she sold to defendant, and this was a part of the land which went to make up the farm which defendant exchanged to plaintiff.

Much is said about the nature and effect of this instrument. It is pointed out that it is a nonexclusive privilege which was granted, and which obligates W. J. and J. F. Douglass to do nothing. It is argued that it is a personal privilege running to them which they could not assign, and which would necessarily end at their death, or if they should abandon it. It will be noted that it was made for a term of ninety-nine years, which naturally contemplates a period of time beyond the natural lives of the parties, and it contains the provision that it "shall be binding upon the heirs, executors, administrators, devisees and assigns" of the parties. Perhaps its specific name is not material. It is clear that it grants the right to harvest the ice which may form from year to year upon the portion of the river described, together with the right of ingress and egress over this about forty-four-acre tract for the purpose of harvesting or marketing the ice. While spoken of as a privilege, it is obviously exclusive if the grantees decided to take all of the ice which might form at the place described, and unquestionably is an encumbrance upon the title to the property conveyed. In *Clark v. Fisher,* 54 Kan. 403, 38 Pac. 493, it was said:

"An encumbrance may be defined to be 'every right to or interest in the land which may subsist in third persons, to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance.'" (Syl. ¶ 1.)

And this definition has been repeatedly applied by the court. (*Wheeler v. Beem,* 111 Kan. 700, 702, 208 Pac. 626; *Haggart v. Wheeler et al.,* 116 Kan. 702, 704, 229 Pac. 357.)

Appellant argues that even though the ice lease is an encumbrance, the amount of damages allowed by the jury is grossly excessive. We are unable to sustain this contention. The Solomon river at this point is near the city of Beloit. At Beloit there is a dam in the river. Above this dam for some distance, and including

that part of the river in question, is a suitable place for the formation of natural ice. The city of Beloit is supplied almost exclusively with natural ice taken from the river above the dam. J. F. and W. J. Douglass, and one or two other ice dealers at Beloit, either own the river or have ice leases upon all that portion of the river near Beloit suitable for the formation of ice in quantities that can be put up, which gives them virtually a monopoly upon that business. So satisfactory has the natural-ice business been at Beloit that no artificial ice plant is located there, and only occasionally is ice shipped in. For that reason an ice lease on the river at this place has a substantial value. Various witnesses called by plaintiff placed the value of this lease at $4,000 to $6,000, while witnesses called by the defendant placed it from $200 to $600. From all the evidence bearing upon this matter, the jury found the damages by reason of this encumbrance to be $1,500. We are unable to say from this record that the amount allowed by the jury is either grossly inadequate or grossly excessive.

Several minor questions are raised, mostly concerning the procedure, but none of them is of consequence.

The judgment of the court below will be affirmed.