[Civ. No. 21902. First Dist., Div. One. Jan. 15, 1965.]

T. M. EVANS, Plaintiff and Respondent, v. HOWARD FAUGHT et al., Defendants and Appellants.

702

Franklin Kay for Defendants and Appellants.

Rawles, Nelson & Golden and Joan G. Poulos for Plaintiff and Respondent.

MOLINARI, J.—Defendants appeal from a judgment, after trial without a jury, awarding plaintiff, the grantee under a grant deed, $5,500 damages for breach by defendant vendors of an implied covenant under said deed.

### The Record

The facts involved in the case are not in dispute. Briefly, they are as follows: Immediately prior to April 15, 1959 defendants Howard Faught and his mother, Violet Faught, were the owners of the ranch in Sonoma County which is the subject matter of this action. Beulah Faught, the remaining defendant in the case and former wife of Howard, at no time possessed any interest in the property.

On May 2, 1949, defendants Howard and Violet Faught leased a portion of the property[1] to the County of Sonoma (hereinafter referred to as "the County"), for the purpose of constructing and maintaining a powder magazine thereon. The lease provided for an annual rent of $100 payable on May 8 of each year, specified that it was to be effective for a 25-year period, and further gave the lessee a right to renew for an additional 25 years. The lease also provided that the

---

[1]The property leased consisted of two parcels of land described by metes and bounds and designated in the lease as Parcel I and Parcel II.

County had the right to traverse a specified road over the lessors' land as a means of access to the leased property. The lease also provided that the lessors agreed "to prohibit the building of any structure" within 2,000 feet from a certain described line on the leased property. The lease was never recorded.

By a grant deed dated April 14, 1959, and signed by Howard, Beulah, and Violet Faught, plaintiff purchased the ranch. Prior to the consummation of the sale, plaintiff visited the ranch and was taken on a tour of the property by Howard. During this tour plaintiff noticed the powder magazine and was informed by Howard that it was the " 'County powder house.' "[2] No other or further discussions were had between plaintiff and any of the defendants concerning the powder magazine, and the agreement of sale was concluded the following morning.

On April 12, 1961, approximately two years after taking title and possession of the ranch, plaintiff, through his attorney, made inquiry of Howard as to his willingness to contribute to the County's cost of relocating the powder magazine on other land in the County in the event that the County was willing to give up the lease. In response to this communication, Howard, through legal counsel, denied that he had any obligation to contribute to the cost of relocating the County's powder magazine, basing his position on the claim that plaintiff had actual knowledge of the County's lease prior to entering into the purchase and sale agreement, and also that plaintiff had made no claim against him.

Thereafter, on October 17, 1961, without further notification to any of the defendants, plaintiff offered the County the sum of $5,500 in exchange for its release of all claims to the subject property and an agreement to vacate the same. This offer was accepted by the County, and upon the payment of said sum the County quitclaimed said property to plaintiff by a quitclaim deed executed on October 24, 1961. Plaintiff thereupon brought this action to recover said sum of $5,500.[3]

---

[2]Howard, the only person called as a witness at the trial, testified with respect to said conversation as follows: "[W]e came to a chain across the road and we stopped, unlocked the chain, and Mr. Evans says, 'What's that?' I says, 'That's the County powder house.' I said 'The County maintains the road from the County road up to here, and we maintain our own private road from here on up,' . . ."

[3]The complaint alleged the execution of the subject lease by defendants to the County; that defendants by their conveyance to plaintiff

At the trial plaintiff's case consisted of calling Howard under Code of Civil Procedure section 2055 and the introduction in evidence of the aforementioned lease, deed, quitclaim deed, letters between the parties, and resolution No. 01000-1 of the County Board of Supervisors. Said resolution recited that there was a dispute between plaintiff and the County as to whether the former was bound by the lease; that plaintiff offered the County the sum of $5,500 in exchange for its release of all claim to the property; that said offer was approved; and that a quitclaim deed was to be executed and delivered to plaintiff upon the payment of said sum. It was stipulated by defendant at the trial that plaintiff paid said sum to the County pursuant to said resolution.[4]

## Questions Presented

1. Did defendants breach the covenant against encumbrances provided for in Civil Code section 1113?[5]

2. Is there any liability for breach of covenant imposed upon Beulah even though she did not have any interest in the property conveyed to plaintiff?

3. If defendants did breach such covenant did the trial court apply the proper measure of damages?

## Covenant Against Encumbrances

The trial court, after finding that the lease had been executed by defendants; that the County had constructed the powder house; that defendant, Howard Faught, pointed the powder house out to plaintiff and had informed him that the County maintained the road on the property, all as aforesaid; and after finding that at the time of the execution of the subject grant deed plaintiff had notice of said lease, concluded that, while the unrecorded and unexpired lease was valid as against plaintiff, it nevertheless constituted a breach

---

impliedly covenanted that the estate conveyed was free from encumbrances; and that "In order to extinguish said lease" plaintiff paid to the County the sum of $5,500.

[4]The record is silent as to whether the annual rental of $100 was paid between the time the property was conveyed to plaintiff and the execution of the quitclaim deed, and, if so, to whom it was paid.

[5]Civ. Code, § 1113, in pertinent part, provides as follows: "From the use of the word 'grant,' in any conveyance by which an estate of inheritance or fee-simple is to be passed, the following covenants, and none other, on the part of the grantor for himself and his heirs to the grantee, his heirs, and assigns, are implied, unless restrained by express terms contained in such conveyance: . . . 2. That such estate is at the time of the execution of such conveyance free from encumbrances done, made, or suffered by the grantor, or any person claiming under him."

of the covenant against encumbrances provided for in Civil Code section 1113.[6] The trial court concluded, further, that notice or knowledge of the outstanding leasehold interest was not a valid defense against an action upon a covenant against encumbrances, and that the construction of the powder house did not remove the lease from the protection afforded a grantee of the property by such covenant.

As to the effect of the County's lease upon plaintiff's interest in the property it is clear that the court below properly found that plaintiff had notice of the unrecorded lease and that, therefore, it was valid and binding upon him. Both the evidence presented at the trial and the stipulation entered into by plaintiff at the trial,[7] warranted this finding and conclusion. Such finding and conclusion were, moreover, in accordance with the cases which, in construing section 1214,[8] have held that an unrecorded lease is not void as against a purchaser who has notice of the lease or such notice as should put him on such inquiry as would disclose its existence. (*Scheerer* v. *Cuddy,* 85 Cal. 270, 272 [24 P. 713]; *Commercial Bank* v. *Pritchard,* 126 Cal. 600 [59 P. 130].)

The rationale of this rule is that a purchaser of premises occupied in part by a third person under an unrecorded lease cannot be said to be an innocent purchaser since possession by such third party may constitute notice to the purchaser, provided it is open, notorious, exclusive and visible, and not consistent with the record title. (*Scheerer* v. *Cuddy, supra,* pp. 272-273; *Manig* v. *Bachman,* 127 Cal.App.2d 216, 221-222 [273 P.2d 596]; *High Fidelity Enterprises, Inc.* v. *Hull,* 210 Cal.App.2d 279, 281 [26 Cal.Rptr. 654].)

The point of disagreement between the parties, however, concerns the effect of the unrecorded lease on defendants' covenant against encumbrances. Plaintiff asserts that although he was bound by the unrecorded lease as between himself and the County, the lease nevertheless constituted an encumbrance within the meaning of sections 1113 and 1114. Defendants,

---

[6]All statutory references hereinafter made are to the Civil Code unless otherwise indicated.

[7]Counsel for plaintiff stipulated that the lease was binding upon plaintiff; that he had notice of the lease; and "That as an ordinary prudent man he should have had knowledge and was on notice of it."

[8]Civ. Code, § 1214, in pertinent part, provides: "Every conveyance of real property, other than a lease for a term not exceeding one year, is void as against any subsequent purchaser . . . of the same property, or any part thereof, in good faith and for a valuable consideration, whose conveyance is first duly recorded. . . ."

on the other hand, contend that because plaintiff had notice of the lease and the presence of the powder magazine, together with the road leading thereto, there could not be a breach of the covenant against encumbrances. ■ Section 1114 provides that "The term 'incumbrances' includes taxes, assessments, and all liens upon real property." In *Fraser* v. *Bentel*, 161 Cal. 390 [119 P. 509, Ann.Cas. 1913B, 1062], the Supreme Court declared that the language of section 1114 does not limit " 'encumbrances' " to those specifically therein mentioned because the word " 'includes' " is one of enlargement rather than limitation. (P. 394.) ■ Accordingly, the meaning of the word "encumbrance" within the compass of section 1114 was defined as any right to, or interest in, land which may subsist in another to the diminution of its value, but consistent with the passing of the fee. (See *Huyck* v. *Andrews*, 113 N.Y. 81 [20 N.E. 581, 582, 10 Am.St.Rep. 432].) ■ In *Johnson* v. *Bridge*, 60 Cal.App. 629, 632 [213 P. 512], the reviewing court, although it did not specifically refer to sections 1113 and 1114, defined an "encumbrance" as follows: "As applied to an estate in land an encumbrance may include whatever charges, burdens, obstructs, or impairs its use or impedes its transfer."

■ Within the ambit of these definitions the California courts have determined the following to be encumbrances: A covenant running with the land restricting the use of property (*Fraser* v. *Bentel, supra*, pp. 393-394; *Jackson* v. *Snow*, 62 Cal.App. 56, 61 [216 P. 60]); building restrictions (*Bertola* v. *Allred*, 46 Cal.App. 593 [189 P. 489]; *Whelan* v. *Rossiter*, 1 Cal.App. 701, 704 [82 P. 1082]; *Tandy* v. *Waesch*, 154 Cal. 108 [97 P. 69]; *Zlozower* v. *Lindenbaum*, 100 Cal.App. 766, 774 [281 P. 102]); a reservation of right-of-way (*Rustigian* v. *Phelps*, 190 Cal. 608, 610 [213 P. 957]; *Zlozower* v. *Lindenbaum, supra*, p. 774; *Tandy* v. *Waesch, supra*); an easement (*Krotzer* v. *Clark*, 178 Cal. 736, 739 [174 P. 657]); an encroachment (*Johnson* v. *Bridge, supra*, p. 632); a lease (*Mann* v. *Montgomery*, 6 Cal.App. 646, 648 [92 P. 875]); a deed of trust (*Hollywood Lumber Co.* v. *Love*, 155 Cal. 270, 273-274 [100 P. 698]; *Babb* v. *Weemer*, 225 Cal.App.2d 546, 551 [37 Cal.Rptr. 533]); and pendency of a condemnation proceeding (*Hunt* v. *Inner Harbor Land Co.*, 61 Cal.App. 271, 272 [214 P. 998]; *Block* v. *Citizens Trust etc. Bank*, 57 Cal.App. 518, 525 [207 P. 510]). In *Fraser* and *Mann* the reviewing courts were particularly concerned with conveyances which came under the purview of section 1113. (See *Jeffers* v.

*Easton, Eldridge & Co.*, 113 Cal. 345, 352-353 [45 P. 680]; and *Southern Pacific Co.* v. *Dore*, 34 Cal.App. 521, 522-523 [168 P. 147], wherein it is held that the covenant implied under section 1113 is limited to conveyances of an estate of inheritance or fee simple.) In both *Fraser* and *Mann* it was flatly held that the encumbrance therein under consideration was an encumbrance under section 1113.

It has been held, however, that an alleged encumbrance consisting of a physical burden upon land, permanent in character and of an open and notorious nature, is not an encumbrance under section 1113. (*Sisk* v. *Caswell*, 14 Cal.App. 377 [112 P. 185]; *Ferguson* v. *Edgar*, 178 Cal. 17 [171 P. 1061]; *Jaques* v. *Tomb*, 179 Cal. 444 [177 P. 280]; *McCarty* v. *Wilson*, 184 Cal. 194 [193 P. 578].) In *Sisk*, the plaintiff conveyed land to the defendant by a deed reserving the right to use a ditch on the land for irrigation purposes. An antecedent agreement of sale contained a provision that the plaintiff agreed to convey the land free and clear of all encumbrances. The plaintiff thereafter sued to enjoin the defendant's interference with the ditch. The reviewing court, in affirming a judgment of the lower court in favor of the plaintiff, held that the ditch was not an encumbrance because it was a physical burden upon the property conveyed which was visible, and that accordingly a presumption arose that the parties acted '' 'with reference to this plain, existing burden,' and as so encumbered the land was purchased by defendant.'' (P. 390.) The *Ferguson* case, although not concerned with a conveyance made pursuant to section 1113, held upon the authority of *Sisk* that a canal and a state highway existing on land which was the subject of a written option for its purchase free and clear of all encumbrances were not encumbrances because such a contract had no reference to existing physical and visible burdens imposed upon the land, the use of which was open and notorious.

In *Jaques*, the land conveyed by a grant deed containing a covenant against encumbrances contained a large levee, owned by and in the possession of a reclamation district, and occupying 8 acres. Relying upon *Ferguson*, the reviewing court held that the covenant could not be considered as having reference to this existing and obvious levee. The *McCarty* case involved an agreement of sale containing a provision that the defendant would receive a deed showing title free from encumbrances. The defendant refused to perform on the

ground that there was an encumbrance consisting of an easement of way for an electric transmission line consisting of wires carried upon steel towers, 60 feet in height, and 14 feet square at the base, resting upon solid and permanent foundations. The evidence disclosed that the defendant had knowledge of the existence of one of these towers. In holding that the plaintiff was entitled to have the contract specifically enforced, the Supreme Court, citing *Ferguson, Jaques* and *Sisk,* held that a general agreement to convey land " 'free and clear of all encumbrances' " did not refer to visible, physical burdens upon the land, permanent in character, and that, in the absence of an express agreement, the defendant vendee was presumed to have contracted to accept the land subject to the transmission line.[9]  (P. 199.)

In all of these cases (*Sisk, Ferguson, Jaques* and *McCarty*), section 203 of Brewster on Conveyances is cited as an authority. ▮▮▮ This text, speaking of that class of encumbrances affecting only the physical condition of the property, states essentially that such burdens, "by way of open and notorious easements," are not really encumbrances within the meaning of the covenant against encumbrances because the real subject matter of the dealings between the grantor and the grantee is the land, subject to visible easements; that where there is a physical burden of this sort there is a reasonable presumption, in the absence of an express agreement, "that both parties act with reference to this plain, existing burden, and that the vendor on the one hand demands, and the vendee on the other hand pays, only the fair value of the land as visibly encumbered." (P. 244.)

The *Sisk* case also relied upon the rule, followed in other jurisdictions, that if the encumbrance is one affecting title, the covenant against encumbrances is broken at the time of the transfer and the vendee's prior knowledge or notice of the encumbrance is immaterial; but if the alleged encumbrance is one which affects only the physical condition of the property, it is not an encumbrance within the meaning of the covenant against encumbrances, and, therefore, the covenant is not broken at the time of the transfer.[10]  (Citing *Memmert*

---

[9] This case, likewise, was not concerned with a conveyance under § 1113 since it did not involve a conveyance of an estate of inheritance or fee simple.

[10] It should be here noted that under the New York rule the grantee's notice of the encumbrance at the time of his taking title does not pre-

v. *McKeen,* 112 Pa. 315, 320 [4 A. 542].) ▮ It should be noted, moreover, that *Sisk* recognizes that there are two kinds of encumbrances, i.e., those which affect title, and those which affect *only* the physical condition of the property. The *Memmert* case mentions a mortgage or other lien as an illustration of the former, and a public road or right-of-way, as illustrative of the latter. In discussing the distinction between the two kinds of encumbrances, *Sisk* quotes from *Memmert* wherein it is stated that an encumbrance affecting title is one that is usually of a temporary character and capable of removal, while an encumbrance affecting the physical condition of the property consists of a servitude imposed upon the land which is visible to the eye and which affects not title, but only the physical condition of the property.

▮ The California rule which we accordingly distill from the cases is as follows : If the encumbrance is one affecting title the covenant against encumbrances is broken at the time of the transfer and the vendor's prior knowledge or notice of the encumbrance is immaterial; but if the alleged encumbrance consists of a physical burden upon the land, permanent in character and of an open and notorious nature, which affects only the physical condition of the property, it is not an encumbrance under section 1113, and the covenant is not, therefore, broken at the time of the transfer. ▮ The rationale of the rule, insofar as it concerns visible physical burdens upon the land, is that in the absence of an express agreement, the vendee is presumed to have contracted to accept the land subject to physical encumbrances of an open and notorious nature. (*McCarty* v. *Wilson, supra,* p. 199; *Ferguson* v. *Edgar, supra,* p. 19; *Jaques* v. *Tomb, supra,* p. 446; *Sisk* v. *Caswell, supra,* p. 389.)

▮ In the light of the foregoing principles it is clear that the land in question was conveyed subject to encumbrances. We are satisfied that within the compass of the foregoing definitions the powder house, the road leading to it, and the subject lease are encumbrances. It is obvious that the powder magazine and the road, because of their physical presence on the land, could constitute a burden thereon which obstructed or impaired its use. ▮ Insofar as the lease is concerned, it is a settled principle that a leasehold is an estate in land and an interest in real property

---

clude him from recovering on the covenant against encumbrances, even where the encumbrance is one affecting only the physical condition of the property.

(*Callahan* v. *Martin,* 3 Cal.2d 110, 118 [43 P.2d 788, 101 A.L.R. 871]) ; it is primarily a conveyance in that it transfers an estate to the lessee. (*Medico-Dental etc. Co.* v. *Horton & Converse,* 21 Cal.2d 411, 418 [132 P.2d 457] ; *Beckett* v. *City of Paris Dry Goods Co.,* 14 Cal.2d 633, 636 [96 P.2d 122].)

Accordingly, the lease constituted a conveyance to the County of an interest in the land, and, as such, was a burden or charge thereon which could serve to impede the transfer of the land and thus diminish its value. Our inquiry, however, is not whether these burdens were encumbrances within the generally accepted definitions of the term, but whether they constituted encumbrances within the meaning of section 1113.

It is clear under the rule hereinbefore discussed that the powder magazine and the road leading to it were not encumbrances within the meaning of section 1113 because they unquestionably constituted physical burdens upon the land of an open and notorious nature. Accordingly, plaintiff was presumed to have contracted to accept the land subject to such physical encumbrances. The important question is the effect of the unrecorded lease. As we have already pointed out, a lease has been held to be an encumbrance within the meaning of section 1113. (*Mann* v. *Montgomery, supra,* 6 Cal.App. 646, 648; see also *Shunk* v. *Fuller,* 118 Kan. 682 [236 P. 449, 451] ; *Estep* v. *Bailey,* 94 Ore. 59 [185 P. 227, 229] ; *Beutel* v. *American Mach. Co.,* 144 Ky. 57 [137 S.W. 799, 800, 35 L.R.A. N.S. 779].) The *Estep* case, which involved an oral lease, holds that the existence of a valid lease to another at the date of the conveyance was a breach of the covenant against encumbrances, such a lease being a burden upon the land which depreciates its value. In *Beutel* it was held that the right of a tenant in possession of land conveyed by a warranty deed, whether such right was pursuant to a month-to-month tenancy or to a lease, was an encumbrance upon the grantor's title and covered by his warranty. The *Mann* and *Estep* cases do not specifically discuss whether a lease is an encumbrance affecting title, but we think there can be little doubt that it is. In *Shunk* and *Beutel* it was specifically held that a lease is an encumbrance upon the title to the property conveyed.[11] We hold, therefore, that an

[11]By way of analogy, the following have been held to be encumbrances affecting title: Building restrictions (*Whelan* v. *Rossiter,* 1 Cal.App. 701, 704 [82 P. 1082] ; *Tandy* v. *Waesch,* 154 Cal. 108 [97 P. 69] ; *Bertola* v. *Allred,* 46 Cal.App. 593 [189 P. 489]) ; reservations for rights-of-way

unrecorded lease which is binding upon a purchaser of real property is a limitation affecting title since it obviously is a right or interest in land which subsists in a third person to the diminution of the value of the land, but is consistent with the conveyance of the title. Because plaintiff had notice of the unrecorded lease prior to the time the property was conveyed to him, he took title subject to it. It was, therefore, a limitation upon defendants' perfect title.

In the light of the applicable rule, plaintiff's knowledge of the existence of the lease prior to the execution of the conveyance is not a bar to an action for breach of covenant since he was entitled to rely upon the covenant in the deed made subsequent to the acquisition of such knowledge. We do not believe, moreover, that we are required to reach a different conclusion merely because the powder magazine and the road, the presence of which put plaintiff on notice of the unrecorded lease, were also physical encumbrances upon the land which he was obliged to accept as burdens since plaintiff was presumed to have contracted to acquire the land subject to such physical burdens. Plaintiff may have been willing to accept whatever visible encumbrances were on the land; he may also have harbored the belief that the powder magazine had become a part of the realty and therefore the property of the lessor (Civ. Code, § 1013), or that it remained a trade fixture during the existence of the lease and was therefore the personal property of the County.[12] (Civ. Code, § 1019; Cf. *West Coast Lumber Co.* v. *Apfield*, 86 Cal. 335, 339 [24 P. 993]; *Roberts* v. *Mills*, 56 Cal.App. 556, 560-561 [205 P. 872].) Suffice it to say, the fact that plaintiff was presumed to accept whatever physical encumbrances were on the land does not compel the conclusion that he was willing to accept title subject to the limitations and conditions imposed by the lease. In sum, the situation presented here is that the encumbrances under consideration are not such as affect *only* the physical condition of the land, but its title as well.

## Beulah's Liability

Defendants contend that since Beulah had no interest

for water pipes and ditches (*Tandy* v. *Waesch, supra*); easement for a pipeline (*Krotzer* v. *Clark*, 178 Cal. 736, 739 [174 P. 657]); and pendency of condemnation action (*Hunt* v. *Inner Harbor Land Co.*, 61 Cal.App. 271, 272 [214 P. 998]).

[12]The facts of the case disclose that the County left the powder magazine on the ranch when it quit the premises.

in the property conveyed plaintiff cannot recover against her on the covenant against encumbrances even though she was a signatory of the subject deed. This assertion is without merit. It is the rule in California that a covenant against encumbrances, implied in a grant of real estate under section 1113, imposes a personal obligation on the grantor; and that where there are two or more grantors, such obligation is joint and several, and is binding on one of them, although he may have no interest in the land at the time of the execution of the grant. (*Holzheier* v. *Hayes*, 133 Cal. 456, 458 [65 P. 968]; *Platner* v. *Vincent*, 194 Cal. 436, 443 [229 P. 24].) The claim made by defendants in their brief that Beulah's signature on the grant deed was involuntarily obtained is likewise without merit since the record is entirely devoid of any evidence as to the circumstances under which she signed the deed.

## The Damages

Defendants argue, firstly, that plaintiff's payment to the County was gratuitous and not recoverable from defendants because plaintiff "owed no duty to the lessee which existed by reason of the lease." The answer to this argument is found in the evidence supporting the finding, already alluded to, that plaintiff had notice of the County's lease and therefore took subject to it.

The other points raised by defendants with respect to damages deal with whether plaintiff has proved damages, and with the proper measure of damages applicable to the present case, assuming some damages were proved. They contend that the proper measure of damages is that provided by section 3300, i.e., "the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."

The usual measure of damages for breach of a covenant against encumbrances is that embodied in section 3305,[13] and is the amount the covenantee actually expends in removing the encumbrance, not exceeding the value of the

---

[13] § 3305 provides as follows: "The detriment caused by the breach of a covenant against incumbrances in a grant of an estate in real property is deemed to be the amount which has been actually expended by the covenantee in extinguishing either the principal or interest thereof, not exceeding in the former case a proportion of the price paid to the grantor equivalent to the relative value at the time of the grant of the property affected by the breach, as compared with the whole, or, in the latter case, interest on a like amount."

property at the time of the breach. (*Fraser* v. *Bentel, supra,* 161 Cal. 390, 395.) This rule refers to such encumbrances as may be satisfied by the payment of money (e.g., mortgages and other liens), but is not applicable to encumbrances which cannot be extinguished, at the will of the owner, by the payment of any sum (e.g., easements or restrictions on the use of land). (*Fraser* v. *Bentel, supra,* p. 395.) In the latter instance the applicable rule is that contained in section 3300, and the damages are based upon the natural and proximate consequences to the plaintiff of the existence and continuance of the encumbrance. Within the purview of this rule ''Just Compensation'' is estimated by the amount which the existence of the encumbrance reduces the market value of the land. (*Fraser* v. *Bentel, supra,* p. 395; 2 Sutherland on Damages, § 627, pp. 2180, 2182.)

We are of the opinion that a lease encumbrance falls in the latter category because it is not such as may be satisfied and extinguished at the will of the owner by the payment of money. The instant lease could only be extinguished with the consent of the lessee. The amount paid in the present case was such as was arrived at and agreed to by plaintiff and the County after negotiation. Accordingly, the proper measure of damages should have been the amount by which the existence of the lease reduced the market value of the land at the time the conveyance was made, and not the sum paid by plaintiff to the County to extinguish the lease. The instant action was, however, tried on the assumption, acquiesced to by both sides, that in the event plaintiff prevailed the correct measure of damages was the amount paid by plaintiff to the County to extinguish the lease. Evidence in support of such theory was introduced by plaintiff without objection by defendants. The record discloses, moreover, that a stipulation was entered into between the parties that plaintiff paid the County the sum of $5,500 pursuant to the resolution approving the settlement between plaintiff and the County.

It is well established that where a case is tried, without objection on the part of the defendant, on the theory that a certain rule for the measure of damages is correct, the defendant cannot urge for the first time on appeal that the case was tried on an erroneous theory as to damages. (*Wolfsen* v. *Hathaway,* 32 Cal.2d 632, 646-647 [198 P.2d 1]; *Murray* v. *San Leandro Rock Co.,* 111 Cal.App.2d 641, 649 [245 P.2d 347]; *Menefee* v. *Raisch Improvement Co.,* 78 Cal.App. 785, 789 [248 P. 1031]; *Wharam* v. *Investment Underwriters,* 58

Cal.App.2d 346, 350 [136 P.2d 363]; *Kaufman* v. *Tomich*, 208 Cal. 19, 26-27 [280 P. 130].) Accordingly, the theory on which the case is tried, that under the issues framed certain damages are recoverable, will be adhered to by the appellate court on appeal. (*Grupe* v. *Glick*, 26 Cal.2d 680, 691 [160 P.2d 832]; *Gibson Properties Co.* v. *City of Oakland*, 12 Cal. 2d 291, 299 [83 P.2d 942]; *Rutherford* v. *Standard Engineering Corp.*, 88 Cal.App.2d 554, 566-567 [199 P.2d 354]; *Zikratch* v. *Stillwell*, 196 Cal.App.2d 535, 543 [16 Cal.Rptr. 660].)

The judgment is affirmed.

Sullivan, P. J., and Bray, J.,* concurred.

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.