Filed 5/14/14  Estate of Dubs CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| Estate of KATHLEEN E. DUBS, Deceased. | |
| LAUREL J. SCRIVANI, as Executor, etc., <br><br>        Petitioner and Respondent, <br><br> v. <br><br> TIMOTHY D. MURPHY, <br><br>        Objector and Appellant. | A136398 <br><br> (City & County of San Francisco Super. Ct. No. PES12295457) |

Timothy D. Murphy appeals in propria persona from an order in a probate proceeding confirming the sale of real property by a decedent's estate.  Murphy was a longtime month-to-month tenant at the property that is the subject of the court's order.  His leasehold interest and the security deposit he paid at the time he entered into the lease are his only connections to the estate.  Because Murphy's legal rights as a tenant are unaffected by the order confirming the sale of the property, we conclude he lacks standing to appeal.  Accordingly, we shall dismiss the appeal.

**FACTUAL AND PROCEDURAL BACKGROUND**

Kathleen E. Dubs (decedent) died on November 23, 2011.  On March 2, 2012, the decedent's sister—petitioner and respondent Laurel J. Scrivani—filed a petition for probate (petition) in San Francisco.  As set forth in the petition, the decedent was a resident of Hungary at the time of her death.  Her sole asset in California was a single family residence on Paris Street in San Francisco (the Paris Street residence).  It was

1

reported in the petition that the decedent's assets in Hungary would be transferred through an informal affidavit procedure without the need for a court-supervised probate administration. The petition also noted that the decedent owned real property "of small value" in Oregon that would be transferred under Oregon law governing small estates.

Attached to the petition was a last will and testament executed by the decedent in 1991. The decedent left her entire estate to Scrivani. As set forth in the petition, the decedent had no spouse, domestic partner, children, or other issue. She was survived by her sister, Scrivani, as well as a brother, Chris Lee Dubs.

Scrivani served notice of the petition on her brother at an address in North Carolina. She also published notice in the Recorder.

On March 28, 2012, the probate court approved the petition and issued orders for probate and letters testamentary. The court appointed Scrivani as executor.

Objector and appellant Timothy D. Murphy is an attorney and was a long-time tenant at the Paris Street residence. He signed a one-year lease that commenced in November 1994. He leased the Paris Street residence on a month-to-month basis under the holdover provision of the lease after the one-year term expired. At the time he signed the lease, he paid a $975 security deposit to a company that managed the property for the decedent.

On May 14, 2012, Murphy filed a creditor's claim in the probate court in the amount of $975—i.e., the amount of the security deposit he had paid in 1994. He also filed a request for special notice as a person interested in the probate proceeding.

Murphy filed a verified petition to revoke probate on August 1, 2012. He claimed Scrivani had committed extrinsic fraud by failing to serve him with the petition. He also asserted that the court lacked fundamental jurisdiction because Scrivani had not provided sufficient proof of the decedent's death, and he claimed the will was facially defective because it omitted any mention of decedent's brother, Chris Lee Dubs.

On August 8, 2012, Scrivani filed a notice of proposed action seeking to approve a sale of the Paris Street residence. The proposed sale was specifically made "subject to tenant's rights." Murphy opposed the proposed sale. Among other things, Murphy

2

claimed the court could not approve the sale until it had ruled on his pending petition to revoke probate. He asserted that Scrivani had not properly served the decedent's brother, Chris Lee Dubs, who resided in Ecuador and not at the North Carolina address where the brother had been served. Murphy also reiterated the claims contained in his petition to revoke probate, and he claimed Scrivani failed to give sufficient advance notice of the hearing to approve the sale of the Paris Street residence.

Scrivani filed a response to Murphy's opposition and argued that Murphy lacked standing to oppose the sale of real property by the estate. She claimed Murphy was not entitled to receive notice of the petition, even if he were a creditor. She also stated that Chris Lee Dubs received actual notice of the petition and she later filed a declaration to that effect from him. She further argued that proof of death is not required for purposes of admitting a will to probate, although she offered to provide the court with a certified copy of a report of death issued by the American Embassy in Hungary.

At a hearing conducted on August 29, 2012, the probate court overruled Murphy's objections and approved the sale of the Paris Street residence. On August 31, 2012, the court filed an order confirming the property sale. The court's written order reflects that the sale of the Paris Street residence is "subject to tenant[']s rights."

This appeal followed. At the time Murphy filed his notice of appeal, the probate court had not yet held a hearing on his petition to revoke probate. The record on appeal reflects that the probate court took the petition to revoke probate off calendar pending the outcome of this appeal.

DISCUSSION

Scrivani contends that Murphy lacks standing to appeal because he is not an aggrieved party within the meaning of Code of Civil Procedure section 902. For the reasons that follow, we agree with Scrivani.

"An appeal may be taken only by a party who has standing to appeal. [Citation.] This rule is jurisdictional." (*Sabi v. Sterling* (2010) 183 Cal.App.4th 916, 947.) "Not every party has standing to appeal every appealable order. Although standing to appeal is construed liberally, and doubts are resolved in its favor, only a person aggrieved by a

3

decision may appeal. [Citations.] An aggrieved person, for this purpose, is one whose rights or interests are injuriously affected by the decision in an immediate and substantial way, and not as a nominal or remote consequence of the decision." (*In re K.C.* (2011) 52 Cal.4th 231, 236; see Code Civ. Proc., § 902 ["[a]ny party aggrieved may appeal"].)

In this case, Murphy contends he has standing because the sale threatens his ability to recover his $975 security deposit and because the sale effectively reduces the value of his leasehold interest in the Paris Street residence. We are not persuaded that he has demonstrated a legally cognizable injury associated with either his security deposit or his leasehold interest.

The landlord-tenant relationship with respect to a security deposit is regulated by statute. Residential tenants such as Murphy are afforded special protections by law. (See Civ. Code, § 1950.5.) Upon termination of a landlord's interest in leased premises, the landlord must either return the security deposit to the tenant or transfer it to the successor in interest. (Civ. Code, § 1950.5, subd. (h).) A successor in interest that receives a transfer of the security deposit has all of the rights and obligations of the landlord with respect to the security deposit. (Civ. Code, § 1950.5, subd. (k).) If the landlord fails to comply with the law requiring either return of the security deposit or transfer to the successor in interest, the landlord and the successor in interest are jointly and severally liable for repayment of the security deposit. (Civ. Code, § 1950.5, subd. (j)(1).) The import of the law governing security deposits is that Murphy's rights as a tenant are protected. The mere fact the Paris Street residence may be sold does not injuriously affect Murphy's legal right to recover his security deposit.

With respect to his leasehold interest more generally, Murphy has failed to explain how the challenged order approving a sale of the Paris Street residence has an immediate and substantial effect on his rights as a tenant. Under California law, a tenant's leasehold interest under an unrecorded lease is not affected by the sale of the leased property to a purchaser who has notice of the lease or the tenant's open and notorious possession of the property. (See *Evans v. Faught* (1965) 231 Cal.App.2d 698, 705; cf. Civ. Code, § 1217 [unrecorded instrument is valid as to those who have notice of it].) In this case, the

4

purchaser plainly had notice of the leasehold interest as a result of Murphy's attempts to prevent the sale from taking place. Moreover, the sale was expressly made subject to tenant's rights. Consequently, Murphy's leasehold interest was unaffected as a direct result of the sale of the Paris Street residence. His rights as a tenant under California law and San Francisco's rent control ordinance remain the same regardless of whether the property is owned by the decedent, the estate, or a purchaser who has actual or constructive notice of the leasehold interest.

Murphy contends that the practical effect of a sale of the Paris Street residence is to reduce the value of his leasehold interest. He reasons that "every owner of a property holds unique intentions about its use" that "affect the monetary and time value of a leasehold interest in the property." Consequently, according to Murphy, a tenant requires protection against a change in ownership that may affect the value of the leasehold interest. He infers that the decedent had no intention of evicting him in light of the fact she allowed him to remain there since 1994, and he complains that he would have no guarantee that a new owner would share the same intention to allow him to remain at the Paris Street residence.

The asserted injury to the value of Murphy's leasehold interest is not a direct and substantial result of the sale of the Paris Street residence. Rather, the economic injury he claims will result from a sale of the property is at best an indirect consequence of the sale. Murphy's concern appears to be that a new owner may seek to evict him, yet he would enjoy the same legal protections after a sale as he did before the property was sold. If a new owner chooses to lawfully evict Murphy, his claimed injury of losing his leasehold interest would be a direct result of the owner's lawful exercise of his rights as a property owner and not an immediate consequence of the prior sale of the property to the new owner.

The analysis in *In re Paul W.* (2007) 151 Cal.App.4th 37 is instructive. There, the court considered whether indirect harm was sufficient to afford appellate standing. The appellant in *Paul W.* was a mother who challenged an order granting the father's petition for habeas corpus relief premised on ineffective assistance of counsel in a juvenile

5

dependency proceeding.  (*Id.* at pp. 43–44.)  The mother alleged that the father sexually abused one of their children.  (*Id.* at p. 45–46.)  Based in part on this allegation, the juvenile court declared the children dependents of the court.  (*Id.* at p. 46.)  The father sought habeas relief, claiming that his appointed counsel was ineffective.  (*Id.* at p. 47.)  The court ultimately granted the father's habeas petition and vacated all of the juvenile court's orders concerning the minors.  (*Id.* at p. 51.)   At the time the court granted habeas relief, the juvenile court had already dismissed the dependency and returned the matter to family court.  (*Id.* at p. 49.)

The mother in *Paul W.* appealed the order granting habeas relief to the father.  (*In re Paul W., supra,* 151 Cal.App.4th at p. 52.)  The appellate court dismissed the appeal on the ground the mother lacked standing.  (*Id.* at p. 65.)  The court rejected the claim that the habeas proceeding affected the children's custodial status, which was not directly at issue.  (*Id.* at p. 61.)  The court acknowledged that the mother "may have suffered indirect harm from the habeas corpus ruling, since it operated to vacate the stay-away orders [directed to the father] and return the matter to joint custody status."  (*Id.* at p. 61, fn. 6.)  Nevertheless, the court concluded there was not a sufficiently direct injury to the mother's custodial interests to support appellate standing.  Furthermore, to the extent the mother suffered an indirect injury, she had a remedy—she could litigate custody and visitation issues in family court.  (*Ibid.*)  The court also pointed out that a party lacks standing to raise issues affecting another person's interests.  (*Id.* at p. 62.)  Consequently, although the mother "strenuously contest[ed]" the habeas corpus ruling and its indirect effect on her, she was "not *legally aggrieved* by it."  (*Id.* at p. 58.)

The same is true here.  Although Murphy strenuously objects to the sale of the Paris Street residence, he is not legally aggrieved by the sale.  His rights as a tenant are not directly at issue and remain the same irrespective of whether the property is sold.  To the extent he may suffer an indirect injury to his interests if a subsequent owner seeks to evict him, he has a legal remedy in that he can assert his rights under both state law and San Francisco's rent control ordinance.

In effect, Murphy seeks to premise standing on an asserted injury to the rights of others. He claims that Scrivani's brother was not afforded sufficient notice of the petition, and he generally objects to the manner in which the estate is being handled, going so far as to claim that Hungary should have primary jurisdiction over the matter. However, his interests as a tenant do not turn on whether a particular will is admitted to probate, whether a potential heir received proper notice, or whether Hungary has some role in the administration of the decedent's estate. His claims are not so much about his interests as a tenant but instead appear to be an effort to interfere with and forestall any potential sale of the Paris Street residence based on an asserted injury to potential heirs. If we were to accept Murphy's theory of standing, then any tenant would presumably have standing to collaterally attack a sale of property by the landlord, without regard to whether the tenant's legal rights are affected by the sale. Murphy has provided no support for such an expansive approach to appellate standing.

Scrivani also contends that Murphy has no standing to challenge the probate proceedings because he is not an "interested party" within the meaning of Probate Code section 48. That section defines an interested person as "[a]n heir, devisee, child, spouse, creditor, beneficiary, and any other person having a property right in or claim against a trust estate or the estate of a decedent which may be affected by the proceeding." (Prob. Code, § 48.) Scrivani contends that Murphy is not a "creditor" and that his interests are not " 'affected by the proceeding.' "

It does not appear that the probate court considered or ruled upon the issue of whether Murphy is an interested party under Probate Code section 48. In any event, it is unnecessary for us to reach the issue. Having concluded that Murphy lacks standing to appeal, we need not consider whether he had standing to assert a claim in the probate court as an interested person under Probate Code section 48. (See *Conservatorship of Gregory D.* (2013) 214 Cal.App.4th 62, 69 [standing to appeal does not turn on whether party had standing in trial court].)

7

As a final matter, we consider Murphy's motion for judicial notice of a Hungarian will purportedly executed by the decedent.  Because we do not reach the merits of the appeal, we deny the motion as moot.

## DISPOSITION

The appeal is dismissed.  Respondent is entitled to recover costs incurred on appeal.

_____

McGuiness, P.J.

We concur:

_____

Pollak, J.

_____

Siggins, J.